## Maffet *versus* Ijams.

Although a contract not to bid at a sheriff's sale, so as to defraud the defendant in the execution, or his creditors, will be declared void, yet, where an agreement is made between certain judgment creditors, that one of their judgments shall be provided for if the holder thereof will not bid at the sheriff's sale, and this agreement is known and assented to by the defendant in the execution, and all his creditors who would be affected by the sheriff's sale, such agreement will be enforced.

April 10th 1883.   Before Mercur, C. J., Gordon, Paxson, Trunkey, Sterrett, Green and Clark, JJ.

Error to the Court of Common Pleas of *Luzerne county:* Of January Term 1882, No. 44.

Assumpsit, by J. P. Ijams against William R. Maffet, upon a written contract, whereby Maffet agreed to provide for certain judgments due Ijams, if the latter would refrain from bidding at a sheriff's sale of certain property upon which said judgments were liens.

At the trial, before Rice, P. J., the following facts appeared: R. C. Smith was the owner of a number of lots of ground in Wilkes-Barre which were encumbered with mortgages. Subsequent to the mortgages, fourteen judgments were entered against Smith, which became general liens on his real estate. Upon the judgment which was the first lien against the property, after the mortgages, and was in the name of C. D. Biddle, execution was issued, and Smith's real estate was advertised to be sold thereunder on February 10th 1877. After this sale had commenced, and several bids had been made, it was adjourned until the afternoon of the same day. During this adjournment the following agreement (upon which this suit is brought), was entered into between J. P. Ijams, who was the owner of the third and fourth judgments against Smith, and Wm. R. Maffet, the owner of a subsequent judgment:

"Now, February 10th 1877, in consideration that J. P. Ijams allows the real estate of R. C. Smith to be sold without bidding, it is agreed that he shall have the property in which he now lives, at a valuation of three thousand dollars, upon which purchase money above judgments shall apply, or if he refuses he shall be paid by me the amount of the above judgments, debt and interest, in two years from this date.

Wm. R. Maffet."

Ijams was the son-in-law of Smith and lived in a house on one of the lots advertised for sale.

The plaintiff claimed that this agreement was made with the knowledge and assent of Smith and his creditors, at the suggestion of L. D. Shoemaker, who had become the owner of the Biddle judgment, and of several other judgment creditors, who,

[Maffet *v.* Ijams.]

owing to the condition of Smith's property under the mortgages, did not wish Ijams to bid at the sale, but were anxious to have the property struck down to Shoemaker, which was done.

The defendant, on the other hand, claimed that this agreement was not known to most of Smith's judgment creditors, and that none of the property was bought at the sheriff's sale for him (the defendant), or in his interest.

The plaintiff submitted the following points:

1. That if the contract of W. R. Maffet of date of February 10th 1877, was made with the knowledge and consent of R. C. Smith, and the creditors of said Smith, the plaintiff is entitled to recover in this case the amount of the two judgments, Nos. 292 and 293, January Term, 1875, with interest and costs of suit.

Answer. "That point we affirm. If you are satisfied that this contract was made with the knowledge and consent of R. C. Smith, and the creditors of R. C. Smith, the plaintiff is entitled to recover the amount of these two judgments."

2. That if the said contract was made with the knowledge and consent of R. C. Smith, the plaintiff is entitled to the same recovery.

Answer. "We say to you, gentlemen, that in order to render this contract valid, it was necessary there should be the approval or the consent of those creditors who would be affected by the bidding of the plaintiff. As thus qualified we affirm the point. Was the contract made with the assent or knowledge and approval of those creditors who would have been affected by the bidding of Ijams' attorney?"

The defendant asked the court to charge:

1. If the jury believe that the agreement was made between Ijams, the plaintiff, or Mr. Payne, his attorney, and Mr. Maffet alone, the verdict should be for the defendant.

Answer. "If we understand this point it excludes the idea of an assent by Mr. Smith, the debtor in the execution. With that understanding we affirm the point."

3. This agreement being made at the sheriff's sale was against public policy, and the verdict should be for the defendant.

Answer. "We decline to charge as requested in this point."

The jury rendered a verdict for the plaintiff and judgment was subsequently entered thereon, whereupon the defendant took this writ assigning for error, the admission of the contract in evidence, "without evidence that it was known of and assented to by all the judgment creditors affected thereby;" and the answers to plaintiff's points as above.

*J. Vaughan Darling* (with whom were *Ryman & Lewis*), for the plaintiff in error.—Any device by which a purchaser at

[Maffet *v.* Ijams.]

sheriff's sale gets land at an under price is a fraud, which will make his title void. A contract, therefore, to do that which must necessarily result in lowering the price and so defrauding the debtor or his creditors, must be void also: Slingluff *v.* Eckel, 12 Harris 472 ; Thompson *v.* Davies, 13 Johns (N. Y.) Rep. 112 ; Jones *v.* Caswell, 3 Johns. Cas. 29 ; Myers *v.* Hodges, 2 Watts 381 ; 1 Story's Eq. 311. The fact that Smith knew of the agreement cannot affect this rule because it is also for the benefit of junior creditors ; and the fact that some of the junior creditors may have had knowledge of it and did not dissent from it, does not affect the inherent vice of the contract.

*W. H. McCartney*, for defendant in error.—This case comes under the rule laid down in Smull *v.* Jones, 6 W. & S. 122, where it was held " that there is nothing illegal in two or more persons agreeing together to purchase a property at sheriff's sale, and fixing a certain price which they are willing to give, and appointing one of their number to be the bidder." This contract was made with the consent of the debtor and his creditors interested therein, and sufficient evidence of this was introduced to warrant the action of the court. It certainly cannot be the law that under such circumstances the creditor entering into such an agreement must show the knowledge and acquiescence of all the other creditors. This would often be impossible ; and if there was an unconsenting creditor who was injured by the agreement, this should have been shown by the defence. Slingluff *v.* Eckel, cited by the plaintiff in error, does not apply here, because in that case the consent of the debtor was not obtained to the contract.

The opinion of the court was delivered April 23d 1883.

PER CURIAM. It is true, a contract not to bid at a sheriff's sale so as to defraud the defendant in the execution, or his creditors, will be declared void. Here, however, there was evidence which justified submitting to the jury that the defendant in the execution, and all his creditors affected by the sale, had notice of the arrangement between the parties in this case. The verdict removes all pretext that any person interested in the sale was defrauded. The plaintiff in error cannot now invoke the rule that under many circumstances his contract might have been contrary to public policy and therefore void. He cannot thus be relieved from the obligation of his contract made with the assent of all persons interested in the property and in the sale thereof.

Judgment affirmed.