## T. W. BARTON v. WILLIAM BENSON.

ERROR TO THE COURT OF COMMON PLEAS OF ERIE COUNTY.

Argued May 2, 1889—Decided May 13, 1889.

A contract between two lien creditors by which one of them is not to bid at an Orphans' Court sale of real estate, if not made known to the heirs of the decedent and their consent obtained, is contrary to public policy and void, even though the real estate sold was not worth the amount of the liens against it: Maffet v. Iiams, 103 Pa. 266, distinguished.

Before PAXSON, C. J., STERRETT, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 464 January Term 1889, Sup. Ct.; court below, No. 113 November Term 1887, C. P.

On October 29, 1887, Theo. W. Barton brought an action of assumpsit against William Benson to recover the amount of a judgment against the estate of James F. Benson, deceased, which the plaintiff alleged that the defendant had agreed to pay. Issue.

At the trial on January 26, 1889, the plaintiff's evidence was substantially to the following effect:

James F. Benson, of Waterford township, Erie Co., Pa., died in March, 1885, leaving a widow and a family of children, and owning a farm of about 70 acres of improved land. This farm was incumbered by the lien of three judgments, as follows: the first, in favor of William Benson, amounting with interest and costs to $2,072.65; the second, in favor of Theo. W. Barton, amounting with interest and costs to $560.58; the third, in favor of William Benson, amounting with interest and costs to $1,732.37, making a total of liens against the real estate of the decedent, $4,365.60. The real estate of the decedent was worth not more than $3,000.

The administratrix of decedent procured an order of the Orphans' Court to sell the real estate for the payment of the debts. On the day fixed for the sale the defendant, Benson,

attended the sale and the plaintiff, Barton, sent his agent W. L. Kelly, who was Barton's brother-in-law to attend in his interest. The only other persons present were Leon Benson, a son of decedent, and W. I. Port, who acted for the administratrix in making the sale. The defendant there agreed with Kelly, that if he, Kelly, would not bid the property up to an amount sufficient to cover Barton's lien, he, Benson, would pay Barton's judgment in full, as he would have to do so in order to protect his lien that was subsequent to Barton's. In pursuance of this agreement Kelly refrained from bidding the property up to the sum of $3,000, enough to cover Barton's judgment, and the farm was struck off to Benson for $1,859, in pursuance of the agreement; thereafter the sale was confirmed to him and deed made in pursuance thereof. Barton assigned his judgment to Benson, so that he, being then the only lien creditor, was in a position to receipt his bid, after payment of expenses, to the administratrix without the payment of the money and the expense of an auditor to make distribution, and did so receipt for $1,456.52, to apply on his liens.

The defendant denied altogether having made the contract with Kelly as alleged by the plaintiff, and further testified, that to avoid the payment of his bid into the sheriff's hands, he had suggested to Barton that he should formally assign his judgment to him, and that he would pay to Barton whatever might be awarded to him on distribution; that after payment of the expenses and the widow's exemption $300, there remained $1,456.52, for which sum on confirmation of the sale he had given the administratrix his receipt, the amount to be applied on his liens.

It was also shown that the alleged agreement between Kelly on the part of Barton, and William Benson, was unknown to the decedent's administratrix, and to Leon Benson. There was no testimony to show that it was known to the other heirs of the decedent.

At the close of the testimony, the court, GUNNISON, P. J., instructed the jury that the agreement established by the plaintiff's testimony was contrary to public policy and could not be enforced.

The jury returned a verdict for the defendant. A rule for

a new trial having been discharged and judgment entered, the plaintiff took this writ, assigning the instruction to the jury as error.

*Mr. E. L. Whittelsey*, for the plaintiff in error.

*Mr. Wm. Benson*, for the defendant in error.

PER CURIAM:

The court below correctly held that the contract declared upon was against public policy, and therefore void. It is true a somewhat similar contract was sustained in Maffet v. Iiams, 103 Pa. 266. In that case, however, it appeared affirmatively that the agreement was known and assented to by the defendant in the execution and all the lien creditors who were or could be affected by it. In the case in hand, the defendant was dead and he could not of course assent or dissent. But his heirs stood in his shoes, and there was no evidence that they ever knew of the arrangement. It is true, it was alleged that the property was not worth the liens and no one could have been injured. We cannot sustain the agreement upon this narrow ground. The allegation may be true, but it would introduce an uncertain element into judicial sales, were we to sustain such an agreement upon the ground that the property was not worth the liens. As a general rule the defendant in an execution, or those who stand in his place, have an interest in making the property bring its full value. Hence an agreement by which persons are debarred from bidding must have the sanction of the defendant. In Slingluff v. Eckel, 24 Pa. 472, it was held that an agreement at sheriff's sale of real estate to pay the judgment of another, if the latter would not bid, the former being permitted to purchase the property at the sale, was fraudulent as to the debtor or his creditors, and could not be enforced by suit.

Judgment affirmed.