Robert H. Roeting and Barbara E. Roeting *v.* The County of Lancaster, Pennsylvania Tax Claim Bureau et al.

Harold E. Martin, Robert E. Plank and Tom Swift, Appellants.

Argued February 9, 1979, before Judges CRUMLISH, JR., WILKINSON, JR. and MENCER, sitting as a panel of three.

*Harold E. Martin, Robert E. Plank,* and *Tom Swift.* appellants, for themselves.

*Louis J. Farina,* with him *Blakinger, Grove & Chillas, P.C.,* for appellees.

OPINION BY JUDGE WILKINSON, JR., April 30, 1979:

Appellants (defendants) appeal a decision of the Court of Common Pleas of Lancaster County setting aside a tax deed executed by the Tax Claim Bureau of Lancaster County (Bureau) pursuant to a tax upset sale held in accordance with the provisions of the Real Estate Tax Sale Law (Law), Act of July 7, 1947, P.L. 1368, *as amended,* 72 P.S. §5860.101 et seq. We reverse.

By virtue of delinquencies in real estate taxes for 1973 appellees' (plaintiffs) property was sold at the tax upset sale held on October 18, 1975 to the three named defendants and two others as tenants in common. The plaintiffs' complaint in equity initially

named as defendants all five purchasers and the Bureau. The two defendants not appealing here suffered entry of a default judgment for failure to file an answer and the plaintiffs, admitting the regularity of the Bureau's procedures, took a voluntary nonsuit with respect to that defendant. Therefore, the only remaining issue is whether defendants, by their conduct at or prior to that sale, have invalidated an otherwise admittedly proper tax upset sale.

The chancellor granted plaintiffs equitable relief after concluding that

> an agreement [existed among the five defendants] to bid for and purchase the Plaintiffs' property as a group [having] as its primary object the stifling of competition and the lowering of the selling price and [which] was therefore illegal as perpetrating a fraud upon the Plaintiffs and rendered the sale to said Defendants void as against public policy.

The findings on which the chancellor determined an illegal bidding combination existed among the defendants are, we think, inadequate to sustain that conclusion.

In addition to his findings regarding the value of the property and the price paid, the chancellor found that the defendants individually performed much of the same "legwork" prior to the sale, that the defendants as a group had never before bid together and in fact each member was not previously acquainted with all of the others, and finally that plaintiffs' property was the only one of the four exposed for sale that day in which all five were interested. The chancellor found that the five defendants entered into an agreement on the morning of the sale to bid on and acquire the plaintiffs' property as a group.

The law presumes that the price received at a duly advertised public sale is the highest and best obtain-

able. *First Federal Savings and Loan Association v. Swift,* 457 Pa. 206, 321 A.2d 895 (1974). Therefore, when one comes into court seeking equitable relief on the basis that an otherwise proper tax upset sale is invalid because of the fraudulent motivation of the purchasers he is faced with a heavy burden of proof. Whether we denominate that burden as one of presenting evidence which is "clear and convincing" or "clear, precise, and indubitable" the plaintiffs in this case fall short.

The context in which these plaintiffs seek equitable relief is critical; the "dominant purposes of the Real Estate Tax Sale Law [are] to provide speedier and more efficient procedures for enforcing tax liens and to improve the quality of titles obtained at a tax sale." *Povlow v. Brown,* 12 Pa. Commonwealth Ct. 303, 307, 315 A.2d 375, 377 (1974). (Footnote omitted.) The courts, therefore, must move cautiously when a duly noticed and conducted tax upset sale is challenged. The strong legislative intention that tax sales, held in conformity with the Law, not be assailed is clearly expressed in subsection 607(g) of the Law, 72 P.S. §5860-.607(g):

If no objections or exceptions are filed, or where objections or exceptions are finally overruled and the sale confirmed absolutely, the validity of the tax, its return for nonpayment, the entry of the claim, or the making of such claim absolute and the proceedings of the bureau with respect to such sale, except as to the giving of notice as required by the act, or the time of holding the sale, or of petitioning court for an order of sale shall not thereafter be inquired into judicially in equity or by civil proceedings. . . . There shall be no period of redemption after such sale and the sale shall be deemed to pass a good and valid title to the purchaser. . . .

The legislature has in this Law provided a comprehensive scheme to aid in the collection of real estate tax delinquencies. Substantial protections are accorded the delinquent landowner in the detailed notice requirements and the specific provision for appeals challenging compliance with those requirements. However, the legislature clearly did not intend the validity of tax sales to be open to challenge on a vague allegation of illegal bidding.

The distinction noted by Justice SIMPSON in *Ford Motor Co. v. Sweeten Automobile Co.*, 318 Pa. 177, 178 A. 48 (1935) between a group of interested parties who join together for the purpose of bidding rather than for the purpose of refraining from bidding is crucial. This case would be substantially different if the evidence revealed that Mr. Swift, the defendant who bid for the group in this case, had paid to each of the other four defendants a certain sum of money to withdraw a bid already made or to refrain from later making a bid. Interestingly, the Bureau's director testified that there were some 30 or 35 people present for the October 18, 1975 sale making it difficult to accept that the defendants, five in number, agreed to bid together with a realistic belief that they could thereby stifle competition. The record evidence is supportive of defendant's explanation of a valid combination created for its members' convenience as opposed to the chancellor's conclusion of a malevolent combination having as its primary purpose the stifling of competitive bidding.

Accordingly, we will enter the following

ORDER

AND Now, April 30, 1979, the final decree of the Court of Common Pleas of Lancaster County at No. 17 Equity Docket page 27, entered December 28, 1977, is hereby reversed.

320

DISSENTING OPINION BY JUDGE CRUMLISH, JR.:

I respectfully dissent.

The question before this Court on review is whether the order of the court below setting aside a sale of property by the Tax Claim Bureau of Lancaster County constitutes a manifest or palpable abuse of discretion. A court may properly upset a tax sale when it finds the consideration paid for the property to be grossly inadequate and evidence of an agreement between parties to refrain from bidding with the object of restraining competition and lowering sales price.

In the instant case the chancellor found the consideration paid by defendants to be wholly inadequate when compared to the property's fair market value and an agreement between defendants to refrain from bidding so as to restrain competition and decrease sales price of the property.

The finding of the chancellor being supported by substantial evidence, I would affirm the decision of the lower court.