Irvin E. Povlow, Appellant, *v.* Lola J. Brown, Appellee.
Dauphin County Tax Claim Bureau, Appellant, *v.* Lola J. Brown, Appellee.

Argued December 3, 1973, before Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT. President Judge BOWMAN did not participate.

*Earl Richard Etzweiler,* for appellant, Povlow.

*Robert A. Enders,* for appellant, Dauphin County Tax Claim Bureau.

*Richard L. Kearns,* with him *Caldwell, Clouser & Kearns,* for appellee.

OPINION BY JUDGE ROGERS, February 7, 1974:

The Tax Claim Bureau of Dauphin County and Irvin E. Povlow have appealed from an order of the Court of Common Pleas of Dauphin County "cancelling" a deed by which the Bureau conveyed to Povlow a house and lot in Harrisburg in consummation of a sale of the property for a delinquent tax. Prior to the tax sale on

September 14, 1970, the property belonged to Lola J. Brown, the plaintiff below and the appellee here. Povlow bid and paid the upset price of $744.19. Mrs. Brown had bought the property for $10,500 in early 1968, and had expended about $3000 in improvements. There were no encumbrances except the delinquent tax. The sale was for delinquent 1968 school tax but the upset price included the 1969 school tax which by the time of the sale had also been returned as unpaid.

The sale was conducted under provisions of the Real Estate Tax Sale Law. Act of July 7, 1947, P. L. 1368, 72 P.S. §5860.101 et seq. The appellee agrees that the Bureau fully complied with the requirements of that Act in making the sale. This concedes that the following things had occurred when this suit in equity[1] was commenced eight months after the sale:

(1) On or before the first Monday of May 1969, the school district or its tax collector filed with the Bureau a claim for the unpaid 1968 school tax levied upon the Brown property.

(2) On or before July 31, 1969, the Bureau sent Mrs. Brown by registered or certified mail a notice that the claim for 1968 school tax had been filed, that if payment to the Bureau of the amount due was not made on or before December 31, 1969, or exceptions filed, the claim would become absolute, and that on July 1, 1969 a one year period of redemption had commenced to run, following which, if the property were not redeemed, it would be sold, after which there would be no further redemption.

(3) Prior to the sale on September 14, 1970, the Bureau gave notice by advertising once a week for three consecutive weeks in two newspapers of general circula-

---

[1] No objection to this suit in equity was raised by the defendants as to the adequacy of the legal remedy of the Action to Quiet Title or as to the failure of the plaintiff to employ means of contesting the sale provided by statute.

tion and once in the legal journal of Dauphin County naming Mrs. Brown as the owner of the property, describing it, giving notice of the time and place of sale and of the provision of law that the sale might be stayed if the owner should agree, prior to sale, to pay the taxes in full or in installments.

(4) At least ten days before September 14, 1970, the Bureau sent Mrs. Brown a written notice similar to the advertisement described in (3) above.

(5) On August 25, 1970, a copy of the notice described in (4) above was posted on the property.

(6) Not later than sixty (60) days after the sale was held the Bureau made a return thereof to the court of common pleas setting forth Mrs. Brown's name as owner, the time and place where the sale was advertised and other information relating to notice and sale, including the name of the purchaser. The court confirmed the return nisi.

(7) Within ten (10) days after confirmation nisi the Bureau published an advertisement in a newspaper of general circulation and the legal journal giving the date when the return had been made and giving notice that objections or exceptions thereto might be filed within sixty (60) days after that date.

(8) No exceptions having been filed, the sale of Mrs. Brown's property was confirmed absolutely.

Subsection 607(g), 72 P.S. §5860.607 which follows the sections of the Act setting forth the foregoing procedures, reads: "If no objections or exceptions are filed, or where objections or exceptions are finally overruled and the sale confirmed absolutely, the validity of the tax, its return for nonpayment, the entry of the claim, or the making of such claim absolute and the proceedings of the bureau with respect to such sale, except as to the giving of notice as required by the act, or the time of holding the sale, or of petitioning court for an order of sale shall not thereafter be inquired into judi-

cially in equity or by civil proceedings by the person in whose name such property was sold, his or her or theirs, or his, her or their grantees or assigns or by any lien creditor or other person whatever. There shall be no period of redemption after such sale and the sale shall be deemed to pass a good and valid title to the purchaser, free from any liens as are hereafter specifically saved, and in all respects as valid and effective as if acquired by a sheriff's deed."

The court below "cancelled" the deed to Povlow[2] solely on the ground of the inadequacy of price. This was a compassionate act, pleasant to perform. It was not, however, within the court's power.[3] The dominant purposes of the Real Estate Tax Sale Law were to provide speedier and more efficient procedures for enforcing tax liens and to improve the quality of titles obtained at a tax sale.[4] The assumption by the court of the power to set aside a sale such as this made after full compliance with the ample notice requirements of the statutes and after confirmation absolute by the court would wholly defeat these purposes; more importantly, for present purposes, it is action in direct contradiction of the Legislature's declaration that there shall be no redemption after a sale confirmed absolutely.

---

[2] Contingent, however, on Mrs. Brown's paying Povlow $744.19 with interest.

[3] The authorities cited by the court were *Capozzi v. Antonopolos*, 414 Pa. 565, 201 A. 2d 420 (1964) ; and *Peoples-Pittsburgh Trust Company v. Blickle*, 330 Pa. 398, 199 A. 213 (1938). Both of these cases dealt with sheriff sales upon writs of execution issued out of the court upon judgments entered therein, are founded on the court's power over its writs and inapposite to this comprehensive statutory provision for accomplishing a vital public function.

[4] The equity of redemption judicially granted below would, if sanctioned, have the effect of making tax titles less attractive than they now are and thus increasing the chance that the amounts bid at tax sales will be inadequate.

At argument, counsel for Povlow expressed his client's willingness to negotiate terms for the reconveyance of the property to Mrs. Brown. It is devoutly to be hoped that the effect of our decision may by this means be avoided.

We reverse the decree of the court below.

DISSENTING OPINION BY JUDGE KRAMER:

I respectfully dissent. While this writer must concede that the facts set forth in the eight enumerated paragraphs of the majority opinion support the Court's conclusion that there was a proper tax sale under the Act, there are additional facts in this case which were presented to the court below sitting in equity which, from my point of view permitted that court to cancel the deed to Irvin E. Povlow (Povlow).

Although it is well recognized that courts of equity in this Commonwealth do not have general equity powers, it is equally recognized that the principles under which suits in equity are determined have remained the same from early common law times. Equity springs from and is administered through the conscience. It is the epitome of justice. As Blackstone himself stated: "[I]t has been said that a court of equity is not bound by rules or precedents, but acts from the opinions of the judge, founded on the circumstance of every particular case." (3 Blackstone Commentaries 432)

The appellee in this case, Lola J. Brown (Brown) is a widowed Black lady now 75 years of age, with a third-grade education. On February 16, 1968, she purchased the dwelling house here in question for $10,500 in cash, with monies obtained from the sale of her former dwelling house. She occupies her home with a daughter and a number of her grandchildren. After she purchased the property, she expended $3,000 to improve it. It is interesting to note that she has paid all real estate taxes, i.e., county and city, with the exception of

the school taxes for the years 1968-69. Her property was sold to Povlow for $744.19, which included the unpaid school taxes.

The record shows that after Brown received her 1968 tax notices she appeared at the tax collector's office and complained about the amount of taxes claimed in the tax statement. She testified that she had been informed upon the purchase of the property that the taxes would run about $245, and the tax statement indicated taxes in the amount of $318. She testified that she was advised by a man in the tax office to "Wait, I'll let you know." She stated: "He said they were go'in to have a meet'in, and 'I'm go'in to present your name.' "

There are additional facts contained in the pleadings and admitted by the defendant. In paragraph 8 of Brown's complaint it is stated: "After several attempts to obtain a reduction in assessment, Plaintiff [Brown] on August 24, 1970, filed a Statement of Intention to Appeal the assessment with the Dauphin County Commissioners." This paragraph was admitted in the answer insofar as relevant. In paragraph 9 of the complaint, we find: "The Dauphin County Commissioners set a hearing on the appeal for September 17, 1970, which thereby stayed the tax sale set for September 14, 1970." The answer denies that the setting of a hearing stays the tax sale, but there is no denial that a hearing was set.

I refer to these facts which are established in the record because they show that the taxing authorities had knowledge that Brown was contesting her assessment and that this was not the usual case of a delinquent taxpayer but rather was a case involving a possible contest on tax liability. This is not to say that there was any merit to Brown's contention concerning her assessment. The point is that before the time of this tax sale the taxing authorities knew that this taxpayer had paid all of her taxes with the exception of

the 1968 and 1969 school taxes, and that she was contesting, rightly or wrongly, those unpaid taxes. Furthermore, the majority overlooks the finding of the court below that for at least one of the notices sent to Brown, someone other than Brown signed the return receipt card. Even the most casual examination of Brown's other signatures in the record with the signature on the subject suspect return receipt card would disclose that it was signed by someone other than Brown.

Accepting the holding of the majority that a tax sale cannot be upset because of inadequacy of price alone, my point is that there are sufficient facts in this record which would permit a court of equity under the principles of justice to cancel this deed conditioned upon full restitution to Povlow, thereby permitting Brown to keep her home.

I would espouse the principle for this case that where the taxing authorities have knowledge of a taxpayer's contest on tax liability and where the chancellor finds as a fact that the taxpayer did not know personally of all of the notices to which she is entitled, the presumption that the taxing authority has carried out all of its statutory responsibilities in a tax sale should not be utilized to penalize the taxpayer. Once again I state, this is not the usual case of the delinquent taxpayer. The record discloses that after she lost her appeal on the assessment, Brown attempted to pay the unpaid school taxes and was told "We done got our money now." From my point of view, if there was ever a case where a chancellor properly carried out the responsibilities of a court of equity, this is the case. I would affirm the court below.