**In re Sally J. HEMSTREET, Debtor.**

**Sally J. Hemstreet, Plaintiff,**

v.

**Jennifer Brostmeyer and Erie County Tax Claim Bureau, Defendants.**

**Bankruptcy No. 00–11506.**
**Adversary No. 00–1090.**

United States Bankruptcy Court,
W.D. Pennsylvania.

Feb. 1, 2001.

Stephen H. Hutzelman, Erie, PA, for Sally J. Hemstreet.

Richard J. Parks, Erie, PA, for Jennifer Brostmeyer.

## OPINION

WARREN W. BENTZ, Bankruptcy Judge.

### Introduction

Sally J. Hemstreet ("Debtor") filed a voluntary Petition under Chapter 13 of the Bankruptcy Code on September 8, 2000. On September 25, 2000, Debtor filed the within Complaint to Avoid Fraudulent Transfer. Debtor seeks to avoid the transfer of real property in Erie County, Pennsylvania (the "Property") pursuant to 11 U.S.C. § 544 and 12 Pa.Cons.Stat. § 5101, et seq. Before the Court is Defendant's, Jennifer Brostmeyer ("Brostmeyer"), Motion to Dismiss pursuant to Fed. R.Bankr.P. 7012(b) and Fed.R.Civ.P. 12(b).

### Facts

For purposes of the Motion to Dismiss, we accept the allegations of the Debtor as true. Thus, for purposes of this Motion, the following facts are accepted as true:

1) The Property is valued at $50,000.

2) The Property was sold by the Erie County Tax Claim Bureau at a properly conducted non-collusive tax sale auction on September 27, 1999 to Brostmeyer for $9,000.

3) Debtor filed an objection to the sale in the Court of Common Pleas of Erie County, Pennsylvania, but the sale was confirmed by Order dated September 11, 2000 and no appeal was taken from that Order.

4) Debtor received a distribution of $6,974.76 from the proceeds of the sale and the balance of $2,075.24 was used for the payment of taxes and costs.

5) Debtor was insolvent at the time of the transfer or was rendered insolvent by the transfer.

### Discussion

Brostmeyer asserts that the Debtor's Complaint must be dismissed as it is in direct conflict with this Court's prior decision in In re Golden, 190 B.R. 52 (Bankr. W.D.Pa.1995). The Golden decision was based primarily on the reasoning set forth by the United States Supreme Court in BFP v. Resolution Trust Corp., 511 U.S. 531, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994). In Golden, we state:

The Debtors assert that the price paid by Eastlake for the Properties at the Tax Sale was not the "reasonably equivalent value" and, therefore, the sales should be avoided as fraudulent transfers under § 548 of the Bankruptcy Code. The Debtors assert that the decision of the United States Supreme Court in BFP v. Resolution Trust Corp., 511 U.S. 531, 114 S.Ct. 1757, 128 L.Ed.2d 556 reh'g denied, 512 U.S. 1247, 114 S.Ct. 2771, 129 L.Ed.2d 884 (1994) ("BFP") that the reasonably equivalent value for foreclosed real property is the price received at a foreclosure sale conducted in accordance with state law requirements should not be extended to tax sales.

We find ourselves in agreement with those courts which have followed BFP, and held that the reasoning of BFP applies as well to regularly conducted tax sales. In re Hollar, 184 B.R. 243 (Bankr.M.D.N.C.1995); In re Comis, 181 B.R. 145 (Bankr.N.D.N.Y.1994); In

re Lord, 179 B.R. 429 (Bankr.E.D.Pa. 1995); In re McGrath, 170 B.R. 78 (Bankr.D.N.J.1994).

"[T]he protections, rights and remedies afforded a delinquent taxpayer under the PA Tax Law are no less than those afforded a mortgagor under Pennsylvania's mortgage foreclosure law." In re Lord, 179 B.R. at 435.

Accordingly, the price paid by Eastlake for the Properties at Tax Sale was the "reasonably equivalent value" under § 548.

Golden, 190 B.R. at 58.

Debtor seeks to avoid the result in Golden by relying on the Pennsylvania Uniform Fraudulent Transfer Act ("UFTA"), 12 Pa. Cons.Stat. § 5101 et seq. instead of the fraudulent conveyance provisions of § 548 of the Bankruptcy Code that were at issue in Golden.

The fraudulent transfer provisions of the Bankruptcy Code and the UFTA are nearly identical. 11 U.S.C. § 548(a)(1) provides:

(a)(1) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

(A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or

(B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

(II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any

property remaining with the debtor was an unreasonably small capital; or

(III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.

11 U.S.C. § 548(a)(1).

The section of the UFTA upon which the Debtor relies, § 5105, provides:

A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

12 Pa.Cons.Stat.Ann. § 5105 (Purdon's 1999).

■ "Reasonably equivalent value" is not defined in the Bankruptcy Code. The Supreme Court states in BFP, "we decline to read the phrase 'reasonably equivalent value' in § 548(a)(2) to mean, in its application to mortgage foreclosure sales, either 'fair market value' or 'fair foreclosure price' (whether calculated as a percentage of fair market value or otherwise). We deem, as the law has always deemed, that a fair and proper price, or a 'reasonably equivalent value,' for foreclosed property, is the price in fact received at the foreclosure sale, so long as all the requirements of the State's foreclosure law have been complied with." BFP, 511 U.S. at 545, 114 S.Ct. at 1765. This Court and others have extended the rationale of BFP to conclude that the price received at a regularly conducted tax sale in compliance with State law is a reasonably equivalent value. Golden, 190 B.R. 52 (and cases cited therein); In re Washington, 232 B.R. 340 (Bankr.E.D.Va.1999) (and cases cited therein).

Debtor directs our attention to 12 Pa. C.S.A. § 5103(b) which provides:

(b) Reasonably equivalent value. For the purposes of sections 5104(a)(2) (relating to transfers fraudulent as to present and future creditors) and 5105 (relating to transfers fraudulent as to present creditors), a person gives reasonably equivalent value if the person acquires an interest of the debtor in an asset pursuant to a regularly conducted, noncollusive foreclosure sale or the exercise of a power of sale for the acquisition or disposition of the interest of the debtor upon default under a mortgage, deed of trust or security agreement or pursuant to a regularly conducted, noncollusive execution sale.

12 Pa.Cons.Stat.Ann. § 5103(b) (Purdon, 1999).

Debtor posits that since § 5103(b) allows a presumption of reasonably equivalent value only in the case of a foreclosure sale and does not mention tax sales; the issue of reasonably equivalent value in a tax sale must be determined as a matter of fact on a case by case basis.

 § 5103(b) extends its safe harbor provisions to include regularly conducted, noncollusive execution sales in addition to foreclosure sales. There is no reason to distinguish between a tax sale and an execution sale. "[A] tax sale is nothing more than a step in the foreclosure of a lien imposed under the taxing power to collect the fair share from those who have failed to meet their burden." *In re Golden*, 190 B.R. 52, 57 (Bankr.W.D.Pa.1995). A tax sale is subject to confirmation by the court and is even less under private control than other types of execution sales. Thus, viewing a tax sale as an execution sale under § 5103(b), the price received at a tax sale is deemed to be a sale for reasonably equivalent value and not subject to the fraudulent transfer provisions.

 We also cannot find that in adopting the Uniform Fraudulent Transfer Act, the Pennsylvania Legislature intended to overturn the comprehensive provisions of the Real Estate Tax Sale Law, 72 Pa.Cons. Stat.Ann. § 5860.101 *et seq.* (Purdon, 1990). "The [Real Estate Tax Sale Law] is the sole authority governing the sale of ... land for delinquent taxes." *First Federal Savings and Loan Ass'n of Lancaster v. Swift*, 457 Pa. 206, 210–11, 321 A.2d, 895, 897 (Pa.1974).

 "The legislature has in [the Real Estate Tax Law] provided a comprehensive scheme to aid in collection of real estate tax delinquencies. Substantial protections are accorded the delinquent landowner in the detailed notice requirements and the specific provision for appeals challenging compliance with those requirements." *Roeting v. County of Lancaster*, 42 Pa.Cmwlth. 315, 401 A.2d 580 (Pa. Cmwlth.1979).

 The Real Estate Tax Law requires adequate notice, advertising, a public sale and a period for objection after the sale has taken place. *In re Golden*, 190 B.R. 52, 57 (Bankr.W.D.Pa.1995). "The advertising attracts bidders to a public sale at which the highest bid is accepted." *Id.* "Such a procedure provides reasonable assurance of the properties bringing a fair price." *Id.* at 57–58.

 "The dominant purposes of the Real Estate Tax Sale Law [are] to provide speedier and more efficient procedures for enforcing tax liens and to improve the quality of titles obtained at a tax sale." *Povlow v. Brown*, 12 Pa.Cmwlth. 303, 307, 315 A.2d 375, 377 (Pa.Cmwlth.1974).

 Challenges to tax sales are limited to filing objections or exceptions to the regularity or legality of the proceedings of the bureau in respect to such sale. *In re Consolidated Return of Sale of Properties for Delinquent Taxes by the Westmoreland County Tax Claim Bureau for the Year 1991*, 166 Pa.Cmwlth. 596, 646 A.2d 751 (Pa.Cmwlth.1994); *In re Sale of Real Estate by Venango County Tax Claim Bureau for 1977 Delinquent Taxes—Sale of 1979*, 68 Pa.Cmwlth. 609, 449 A.2d 879 (Pa.Cmwlth.1982); *Lapp v. Coun-*

ty of Chester, 67 Pa.Cmwlth. 86, 445 A.2d 1356 (Pa.Cmwlth.1982); *Povlow v. Brown,* 12 Pa.Cmwlth. 303, 315 A.2d 375 (Pa. Cmwlth.1974). *See also First Federal Savings and Loan Ass'n. of Lancaster v. Swift,* 457 Pa. 206, 321 A.2d 895 (Pa.1974). Under the provisions of the Real Estate Tax Sale Law, a court cannot upset the sale on the basis of an inadequate price. *Lapp v. County of Chester,* 67 Pa.Cmwlth. 86, 445 A.2d 1356 (Pa.Cmwlth.1982); *Povlow v. Brown,* 12 Pa.Cmwlth. 303, 315 A.2d 375 (Pa.Cmwlth.1974).

In adopting the provisions of the UFTA, the Pennsylvania Legislature certainly did not intend to preempt the Real Estate Tax Sale Law to prevent a purchaser at a tax sale from having good title by subjecting the title to attack as a fraudulent conveyance for the limitations period of four years in direct conflict with the purpose of the Real Estate Tax Sale Law to provide speedy and efficient procedures for enforcing tax liens and to improve the quality of titles obtained at a tax sale.

There is yet another reason why the Debtor's Complaint must fail. "[T]he UFTA is a uniform act, and it derived the phrase 'reasonably equivalent value' from 11 U.S.C. § 548(a)(2)." *In re Image Worldwide Ltd.,* 139 F.3d 574, 577 (7th Cir.1998). "Thus, we can look to interpretations of 'reasonably equivalent value' from § 548 cases." *Id. In re Joy Recovery Technology Corp.,* 257 B.R. 253 (Bankr. N.D.Ill.2001). Therefore, if § 5103(b) could somehow be interpreted as not being applicable to tax sales, we can look to cases such as *BFP, Golden,* and *Washington* to reach the conclusion that the price received at a properly conducted, noncollusive tax sale auction constitutes reasonably equivalent value.

For all of the foregoing reasons, the Complaint will be dismissed.