**[J-50-2020]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| FRED LOHR AND JOLENE K. FOUSE, | : | No. 67 MAP 2019 |
| | : | |
| Appellants | : | Appeal from the Order of the |
| | : | Commonwealth Court dated March |
| | : | 7, 2019 at No. 128 CD 2018 |
| v. | : | Affirming the Order of the |
| | : | Huntingdon County Court of |
| | : | Common Pleas, Civil Division, dated |
| SARATOGA PARTNERS, L.P. AND | : | October 23, 2017 at No. CP-31-CV- |
| HUNTINGDON COUNTY TAX CLAIM | : | 1701-2016. |
| BUREAU, | : | |
| | : | ARGUED: May 21, 2020 |
| Appellees | : | |

## OPINION

**JUSTICE BAER** **DECIDED: October 1, 2020**

We granted discretionary review to consider whether the availability of a taxpayer remedy under the Municipal Claims and Tax Liens Act ("MCTLA"), 53 P.S. §§ 7101-7505, but not the Real Estate Tax Sale Law ("RETSL"), 72 P.S. §§ 5860.101-5860.803, violates the equal protection provisions of the United States and Pennsylvania Constitutions. Relevantly, and absent exceptions described *infra*, the MCTLA permits delinquent taxpayers in the first and second class counties of Philadelphia and Allegheny to redeem property sold at an upset tax sale by paying the delinquent taxes and other costs within nine months of the sale, while the RETSL, which governs upset tax sales in second class

A through eighth class counties, explicitly excludes post-sale redemption.[1] After review, we conclude that the General Assembly's decision to omit the right of post-sale redemption from the RETSL is constitutional because it is rationally related to a legitimate state interest as discussed below. Accordingly, we affirm the order of the Commonwealth Court upholding the denial of the delinquent taxpayers' petition to redeem in this case involving a tax sale governed by the RETSL.

Appellants, Fred L. and Jolene K. Fouse ("the Fouses") owned two parcels of land in Lincoln Township, Huntingdon County, identified by Tax Identification Numbers 24-08-02 and 24-08-01.1 ("the Property"), which they utilized as their primary residence from the time they acquired the two parcels in 1976 and 1987, respectively. Eventually, the Fouses fell behind in the payment of their taxes on the Property, owing a total of $16,747.50 for 2014 and 2015, according to the Huntingdon County Tax Claim Bureau ("Tax Claim Bureau").[2] As mandated by the RETSL, the Tax Claim Bureau scheduled an upset tax sale for September 2016 and provided the requisite notice and publication. At the tax sale, appellees, Saratoga Partners, L.P. ("Saratoga"), submitted the highest bid of $27,795.45.

Three months later, in December 2016, the Fouses filed a "petition to redeem property sold at tax sale" ("Petition to Redeem"), even though Huntington County, as a sixth class county, is governed by the RETSL, which, as set forth *infra*, prohibits post-sale

---

[1] An upset tax sale, generally, is the sale of property to recoup unpaid taxes at which all bids must equal or exceed a predetermined price sufficient to pay specified taxes, claims, and costs. *See, e.g.,* 72 P.S. § 5860.605 (RETSL provision entitled "Upset sale price").

[2] The properties had a total assessed value of $152,800, according to the Tax Claims Bureau. Brief in Opposition to Petition to Redeem at 2 (unnumbered).

redemption.[3]  Instead, the Fouses asserted, *inter alia*, a right to redeem under Section

7293 of the MCTLA by paying the amount paid by Saratoga at the tax sale.[4]  The Fouses

asserted that they deposited funds in escrow to cover the relevant taxes and costs.  The

_____

[3] Before this Court, the Fouses only assert their right to redeem the Property.  Accordingly, we will not discuss the other issues raised in the Petition to Redeem.

[4] Section 7293 of the MCTLA provides in relevant part:

> §7293. Redemption
>
> (a) The owner of any property sold under a tax or municipal claim, or his assignees, or any party whose lien or estate has been discharged thereby, may, except as provided in subsection (c) of this section, redeem the same at any time within nine months from the date of the acknowledgment of the sheriff's deed therefor, upon payment of the amount bid at such sale; the cost of drawing, acknowledging, and recording the sheriff's deed; the amount of all taxes and municipal claims, whether not entered as liens, if actually paid; the principal and interest of estates and encumbrances, not discharged by the sale and actually paid; the insurance upon the property, and other charges and necessary expenses of the property, actually paid, less rents or other income therefrom, and a sum equal to interest at the rate of ten per centum per annum thereon, from the time of each of such payments . . . .  [Addressing rights of lienholders to redeem.]
>
> (b) Any person entitled to redeem may present his petition to the proper court, setting forth the facts, and his readiness to pay the redemption money; whereupon the court shall grant a rule to show cause why the purchaser should not reconvey to him the premises sold; and if, upon hearing, the court shall be satisfied of the facts, it shall make the rule absolute, and upon payment being made or tendered, shall enforce it by attachment.
>
> (c) [Addressing vacant properties]

53 P.S. § 7293.

trial court issued a rule to show cause why the relief should not be granted, ordered briefing, and scheduled a hearing on the matter.

In their brief in support of the Petition to Redeem, the Fouses acknowledged that the MCTLA applies to first and second class counties, which include Philadelphia and Allegheny, while the RETSL generally governs all other counties, including Huntingdon.[5] The Fouses emphasized that the MCTLA provides delinquent property owners a post-sale right of redemption if delinquent taxes and costs are paid within nine months of the upset sale, while the RETSL explicitly instructs that "[t]here shall be no redemption of any property after the actual sale thereof." 72 P.S. § 5860.501(c).

The Fouses argued that the absence of a right of redemption provision in the RETSL, in contrast to the existence of the right in the MCTLA, results in citizens of second class A through eighth class counties being treated less favorably than citizens of first and second class counties, in violation of the equal protection provisions of the United States and Pennsylvania Constitutions.[6] The Fouses additionally asserted that property rights are fundamental rights subject to strict scrutiny, which requires any statutory classification to be narrowly tailored to support a compelling government interest.

---

[5] Within Allegheny County, the City of Pittsburgh is separately governed by the Second Class City Treasurer's Sale and Collection Act, 53 P.S. §§ 27101-27605. It limits taxpayer's ability to redeem to "[w]ithin 90 days after the date of the treasurer's sale." 53 P.S. § 27304.

Moreover, the MCTLA allows tax claims bureaus of second class A to eighth class counties to adopt the procedures and remedies of the MCTLA, including the redemption provision, in addition to those provided in the RETSL, 53 P.S. § 7193.5. Huntingdon County apparently has not adopted these procedures.

[6] The Equal Protection Clause of the United States Constitution's Fourteenth Amendment and the relevant provisions of the Pennsylvania Constitution are set forth *infra* at 17-18 n.16.

In addressing the state interest prong, the Fouses recognized that this Court has held that the purpose of tax sale laws is "not to strip the taxpayer of his property but to ensure the collection of taxes." Brief in Support of Petition to Redeem at 9 (unnumbered) (quoting *Tracy v. County of Chester, Tax Claim Bureau*, 489 A.2d 1334, 1339 (Pa. 1985)). The Fouses argued that the state interest in collecting taxes is served by the redemption provision because it allows for property owners to pay the taxes and all costs incurred. They maintained that the absence of the redemption provision does not advance the purpose of tax collection but instead divests the property owner of their rights, such that it is not narrowly tailored to tax collection, as required for strict scrutiny.[7]

The Tax Claim Bureau responded, emphasizing that both the MCTLA and the RETSL contain provisions that allow delinquent taxpayers to remedy an upset tax sale. The MCTLA, as stated, allows property owners to redeem the property within nine months of a tax sale, upon payment of the taxes and costs. The RETSL, however, provides a pre-sale remedy by which property owners can stay the sale of their property by paying twenty-five percent of the delinquent taxes prior to the date set for the upset sale and agreeing to an installment plan to pay the remaining taxes within the next twelve months. Brief in Opposition to Petition to Redeem at 4 (unnumbered) (referencing 72 P.S.

---

[7] The Fouses also originally asserted their claims under the Uniformity Clause of Article VIII, Section 1, but it appears that they abandoned that claim before this Court, presumably because Article III, Section 20 of the Pennsylvania Constitution expressly allows the legislature to treat counties differently based on population, s*ee infra* at 7 n.9.

They additionally raised a substantive due process claim in their Petition to Redeem. While they abandoned that argument by failing to raise it in their Pa.R.A.P. 1925(a) Statement of Matters Complained of on Appeal, many of the arguments in support of that proposition overlap with their ongoing equal protection claims. Accordingly, they have been included herein where relevant.

§ 5860.603 of the RETSL).[8]  Thus, they emphasized that both acts allow for taxpayers to regain their property by paying the delinquent taxes within a year of the scheduled tax sale.

---

[8] Section 5860.603 of the RETSL provides as follows:

§ 5860.603. Removal from sale; agreements to stay sale

Any owner or lien creditor of the owner may, at the option of the bureau, prior to the actual sale, (1) cause the property to be removed from the sale by payment in full of taxes which have become absolute and of all charges and interest due on these taxes to the time of payment, or (2) enter into an agreement, in writing, with the bureau to stay the sale of the property upon the payment of twenty-five per centum (25%) of the amount due on all tax claims and tax judgments filed or entered against such property and the interest and costs on the taxes returned to date, as provided by this act, and agreeing therein to pay the balance of said claims and judgments and the interest and costs thereon in not more than three (3) instalments all within one (1) year of the date of said agreement, the agreement to specify the dates on or before which each instalment shall be paid, and the amount of each instalment. So long as said agreement is being fully complied with by the taxpayer, the sale of the property covered by the agreement shall be stayed. But in case of default in such agreement by the owner or lien creditor, the bureau, after written notice of such default given by United States mail, postage prepaid, to the owner or lien creditor at the address stated in the agreement, shall apply all payments made against the oldest delinquent taxes and costs, then against the more recent. If sufficient payment has been made to discharge all the taxes and claims which would have caused the property to be put up for sale, the property may not be sold. If sufficient payment has not been received to discharge these taxes and claims, the bureau shall proceed with the sale of such property in the manner herein provided either at the next scheduled upset sale or at a special upset sale, either of which is to be held at least ninety (90) days after such default. If a party to an instalment agreement defaults on the

Saratoga additionally filed a brief in the trial court in support of denying the Fouses' Petition to Redeem. It rejected the Fouses claim to a right of redemption, as it viewed redemption to be merely "an equity" provided by the statute. Saratoga Brief in Opposition to Petition to Redeem at 6-7 n.3. Thus, it argued that, in the absence of the derogation of a fundamental right, rational basis, rather than strict scrutiny, should be applied to the Fouses' equal protection challenge.

Saratoga emphasized that the Pennsylvania Constitution explicitly allows for classifications based on county size in Article III, Section 20.[9] Saratoga highlighted that this Court has found variations in taxation between territorial divisions, such as between Pittsburgh and Philadelphia, to be constitutional under the Uniformity Clause, so long as there is uniformity within the territorial division, citing *Moore v. School Dist. of Pittsburgh*, 13 A.2d 29, 32 (Pa. 1940).

---

agreement, the bureau shall not enter into a new instalment agreement with that person within three (3) years of the default.

72 P.S. § 5860.603.

[9] Section 20 provides in full as follows:

The Legislature shall have power to classify counties, cities, boroughs, school districts, and townships according to population, and all laws passed relating to each class, and all laws passed relating to, and regulating procedure and proceedings in court with reference to, any class, shall be deemed general legislation within the meaning of this Constitution.

PA. CONST. art. III, § 20.

In October 2017, the trial court denied the Petition to Redeem. After the Fouses filed a notice of appeal, the court authored an opinion in support of its order.[10] The trial court recognized that the distinction between the MCTLA and the RETSL resulted in property owners in some areas, including Philadelphia, having a right to redeem their properties within nine months of an upset tax sale, while those in less populated counties, such as the Fouses in Huntingdon County, do not have that opportunity. The court, however, concluded that the distinction withstood constitutional scrutiny.

In so doing, the court applied the rational basis test, which requires that the statute promote a legitimate state interest and that the classification be "reasonably related to accomplishing that articulated state interest." Tr. Ct. Op. at 5 (citing *Curtis v. Kline*, 666 A.2d 265, 269 (Pa. 1995)). The trial court looked first to the state's interest in enacting the RETSL without a redemption provision. It recognized the "dominant purposes of the [RETSL] were to provide speedier and more efficient procedures for enforcing tax liens and to improve the quality of titles obtained at a tax sale," which, in turn, promoted the state's interest in tax collection. Tr. Ct. Op. at 5 (quoting *Povlow v. Brown*, 315 A.2d 375, 377 (Pa. Cmwlth. 1974)).

Agreeing with the court in *Povlow*, the trial court observed that "redemption would have the effect of making titles less attractive" and likely result in lower bids, which might be insufficient to satisfy the taxes due. *Id.* at 6 (quoting *Povlow*, 315 A.2d at 377 n.4) (alterations in original removed). The court additionally opined that the classification of

---

[10] The Fouses originally filed their appeal in Superior Court, and the case was later transferred to the Commonwealth Court in January 2018.

In the Fouses' Pa.R.A.P. 1925(b) Statement of Matters Complained of on Appeal, they asserted the following single issue: "The failure of the Real Estate Tax Law of 1947 to provide taxpayers with a redemption period violates both the Equal Protection Clause of the United State Constitution and Article III of the Constitution of the Commonwealth of Pennsylvania."

taxpayers subject to the MCTLA rather than the RETSL was "addressed by Article III, Section 20, of the Pennsylvania Constitution[,] which specifically permits classification by population." *Id.* Given the presumption in favor of constitutionality, the trial court concluded that the lack of a redemption provision in the RETSL did not violate taxpayers' right to equal protection under the federal or state constitutions.

On appeal to the Commonwealth Court, the Fouses asserted that the trial court erred in applying rational basis scrutiny to their constitutional challenge. In a published decision of a divided three-judge panel, the Commonwealth Court affirmed the trial court's order denying the Fouses' Petition to Redeem. *Fouse v. Saratoga Partners*, *L.P.*, 204 A.3d 1028 (Pa. Cmwlth. 2019). The court viewed the Fouses' claim as focused on their equal protection rights secured by the Pennsylvania Constitution, specifically Article I, Sections 1 and 26,[11] rather than the federal Equal Protection Clause. It opined, however, that the provisions were coextensive.[12] *Id.* at 1033 n.9.

The Commonwealth Court first considered the applicable level of constitutional scrutiny. The court viewed "the Fouses' asserted right to post-tax-sale redemption" as subsumed within the broader "right to 'freely hold and dispose of' one's property," which the court previously deemed subject to rational basis review because it did not involve a fundamental right. *Fouse,* 204 A.3d at 1036 *(quoting McSwain v. Commonwealth,* 520 A.2d 527, 530 (Pa Cmwlth. 1987)). The court also reasoned that rational basis review was appropriate because the applicability of the MCTLA rather than the RETSL derived from the population size of the county. It emphasized that this criteria "implicate[d] neither a suspect class nor a sensitive classification," which would have triggered a higher level

---

[11] Section 1 and Section 26 are set forth *infra* 17-18 n.16.

[12] The Commonwealth Court indicated that the Tax Claim Bureau failed to file a brief and was precluded from participating in the appeal. *Id.* at 1033 n.8.

of scrutiny. *Id.* at 1036 n.11 (citing *Small v. Horn*, 722 A.2d 664, 672 n.14 & 15 (Pa. 1998)).

As did the trial court, the Commonwealth Court looked to this Court's decision in *Curtis* for application of the rational basis test to an equal protection challenge. It recognized that the rational basis test generally requires courts to "determine whether the challenged statute seeks to promote any legitimate state interest or public value" and then to "determine whether the classification adopted in the legislation is reasonably related to accomplishing that articulated state interest or interests." *Id.* at 1036 (quoting *Curtis*, 666 A.2d at 269). It recognized that "[t]he prohibition against treating people differently under the law does not preclude the Commonwealth from resorting to legislative classifications, provided that those classifications are reasonable rather than arbitrary" and "rest upon some ground of difference which justifies the classification and has a fair and substantial relationship to the object of the legislation." *Id.* at 1037 (quoting *Curtis*, 666 A.2d at 267-68 (citations omitted)). The court further observed that "[a] classification, though discriminatory, is not arbitrary or in violation of the equal protection clause if any state of facts reasonably can be conceived to sustain that classification." *Id.* (quoting *Curtis*, 666 A.2d at 268 (citations omitted)). It opined that the rationale does not need to be set forth in the legislation or asserted by the Commonwealth, but instead recognized that courts may hypothesize justifications supporting the classification. *Id.* at 1037-1038 (citing *Pa. Liquor Control Bd.*, 485 A.2d 732, 735 (Pa. 1984); *Curtis*, 666 A.2d at 268)).

Applying these principles, the Commonwealth Court first looked to whether the legislature had a legitimate state interest in excluding redemption from the RETSL. Echoing the trial court's reliance on *Povlow*, the court concluded that the RETSL promoted the legitimate government interest in "speedier and more efficient procedures

for enforcing tax liens and [improving] the quality of the title" sold at tax sales. *Id. (*quoting *Pacella v. Washington Cty. Tax Claim Bureau*, 10 A.3d 422, 428 (Pa. Cmwlth. 2010)).

The Commonwealth Court next considered whether the legislative classification between more populated counties, with the right of redemption under the MCTLA, and less populated counties, without the remedy under the RETSL, was rationally related to the legitimate legislative purpose of a more efficient tax collection process. The court found the test satisfied based upon the following analysis, which is central to the instant appeal:

> [W]e posit that Pennsylvania's first and second class counties have larger pools of prospective buyers at tax sales. These larger pools of prospective buyers make it more likely that a property will be sold at a tax sale. Under these circumstances, the need for owner protection is greater, and that need is met by the equity of redemption in the more populous counties. Further, as these counties have a higher population and, therefore, a larger taxable base from which to derive revenue, the General Assembly could have reasoned that these counties can afford a less efficient process for collecting delinquent taxes by providing a post-tax-sale right of redemption

*Id.*at 1038. Given that the court could "conceive of plausible reasons for the statute, and the legislative classification does not rest on grounds wholly irrelevant to the achievement of the state's purpose," it concluded "that RETSL's lack of a post-tax-sale right of redemption provision satisfies rational basis review." *Id.* Accordingly, the court affirmed the trial court's order denying the Fouses' Petition to Redeem.

Judge McCullough dissented. Emphasizing the similarities between the two statutes, the dissent opined that "there are no significant substantive or procedural differences between the RETSL and the MCTLA, except for the automatic right to redemption in the MCTLA." *Id.* at 1040 (McCullough, J., dissenting). With the asserted similarity as backdrop, the dissent rejected the rationale conceived by the majority to

support the legislative classification, which was based on the distinction between large and small counties. The dissent opined that it found this rationale unpersuasive because Section 7193.5 of the MCTLA provided tax claims bureaus in the counties with smaller populations with the ability to adopt aspects of the MCTLA. Thus, the dissent argued, the MCTLA allowed citizens of some less populated counties to utilize the redemption provisions, despite the size of their populations. *Id.* (citing 53 P.S. § 7193.5. ("The tax claim bureaus of the several counties may adopt and use the procedures set forth in this act in addition to the procedures set forth in the [RETSL].")). The dissent opined that there was "no apparent basis relating specifically to differences in population that would rationalize excluding the right of redemption from the RETSL." *Id.* at 1040-41.

The dissent "view[ed] the right of redemption as a personal, individual right that provides a homeowner with an extra or final chance to reclaim property following" a tax sale. *Id.* at 1041. It continued, opining that regardless of the population of the county in which "a homeowner resides, that homeowner shares the same interest in redemption as any other homeowner located anywhere else in the Commonwealth." *Id.* Accordingly, the dissent concluded that classification violated the equal protection provisions of the federal and Pennsylvania Constitutions. The dissent would instead "enjoin enforcement of the RETSL and enter an order requiring all the counties in the Commonwealth to utilize the MCTLA (which they are already authorized to do) as the sole procedure through which to conduct tax sales," thus ensuring that all taxpayers have the equal option to redeem. *Id.* at 1042 (footnote omitted).

The Fouses sought allowance of appeal, which this Court granted, to address the following issue: "Whether the lack of a right to redemption under the Real Estate Tax Sale Law (RETSL) 72 P.S. § 5860.101 *et seq.*, violates the Equal Protection Clause of the United States Constitution and Article III of the Pennsylvania Constitution." [*Fouse*] *v.*

*Saratoga Partners, L.P.*, 217 A.3d 794 (Pa. 2019). In this Court, the Fouses reassert the arguments they raised in the lower tribunals.[13]

They frame the right involved as the "right to acquire, possess, and protect property," which they emphasize is an "inherent and indefeasible right" under Article I, Section 1 of the Pennsylvania Constitution. Fouses' Brief at 9-10 (quoting PA. CONST. Art. I, § 1). They recognize that, while this Court has not specifically identified the right to acquire, possess, and protect property as a fundamental right, we have deemed other rights in Article 1, Section 1 to be fundamental, including the right to reputation. *Id.* at 10.

Arguing that strict scrutiny should be applied to this fundamental right, they contend that the differentiation between taxpayers who have access to a remedy of redemption under the MCTLA and those who do not under the RETSL must be narrowly tailored to support a compelling government interest. They assert that "[t]he classification of citizens based upon the population of the municipality in which they live does not serve a compelling government interest." *Id.* at 7.

Assuming *arguendo* that this Court deems the right subject to rational basis review, the Fouses alternatively argue that the classification fails to meet that lower standard as well. They assert that the redemption provision protects the government interest in the collection of taxes. The Fouses contend that "neither the government nor the land speculator are deprived of anything" through the use of a redemption remedy because the "government's tax interest is paid and the speculator's bid is returned, along with any actual costs." *Id.* at 14. They acknowledge, however, that the speculator "must wait to see if his speculation will bear fruit" during the redemption period. *Id.*

---

[13] Although the Fouses' question asserts a right of equal protection under Article III of the Pennsylvania Constitution, their argument relies primarily upon the equal protection provision of Article I, Section 1 of the Commonwealth's charter, as it has throughout the course of this litigation.

In contrast, they argue that the lack of a redemption remedy merely serves "to divest owners of their property, even when the owner comes forth with all monies owed, in hand." *Id.* at 12. They emphasize that this Court in *Tracey*, 489 A.2d at 1339, held that the purpose of tax sale laws is "not to strip the taxpayer of his property but to ensure the collection of taxes." *Id.* at 14.

The Fouses reject the trial court and the Commonwealth Court's justifications for the classifications of citizens subject to the MCTLA and the RETSL based upon the population size of their counties. In this regard, the Fouses relied upon the reasoning of the dissent in the Commonwealth Court, which emphasized that the tax bureaus in the less populous counties have the ability to opt into the procedures of the MCTLA, 53 P.S. § 7193.5, and, accordingly, "there is no apparent basis relating specifically to differences in population that would rationalize excluding the right of redemption from the RETSL." Fouses' Brief at 14 (quoting *Fouse,* 204 A.3d at 1040-41 (McCullough, J., dissenting)).[14]

Saratoga responds by arguing that the relevant right is not the right to acquire, possess, or protect property but rather a claimed right to redeem property, which it contends is not a right encompassed by Article 1, Section 1. Saratoga avers that this Court has previously addressed the lack of a right to redeem under the RETSL in *Bernitsky v. Schuylkill County*, 112 A.2d 120, 130 (Pa. 1955), discussed *infra*, which addressed the elimination of a redemption provision when the RETSL was enacted in 1947. The Court in *Bernitsky* opined that the redemption right included in a prior statute could be eliminated by the Legislature through the RETSL as it was not a vested right.

Saratoga argues that the Legislature's decision to include post-sale redemption in the MCTLA but not the RETSL should be subject to the rational basis test, requiring the distinction to be rationally related to a legitimate state interest. It emphasizes that this

---

[14] The Community Justice Project submits an *amicus curiae* brief in support of the Fouses.

Court has long found the collection of taxes to be a legitimate state interest given that "taxes are the life-blood of government, and their prompt and certain availability an imperious need." Saratoga's Brief at 14-15 (quoting *Cedarbrook Realty Inc. v. Nahill*, 399 A.2d 374, 378 (Pa. 1979)).

Saratoga next considers whether the distinction between the MCTLA and RETSL regarding the right of redemption is rationally related to the state's interest in collecting delinquent taxes. In contrast to the Commonwealth Court dissent's conclusion that the redemption provision was the primary difference between the MCTLA and the RETSL, Saratoga highlights a number of distinctions between the statutes, which provide context for the inclusion or exclusion of the redemption provision. Specifically, it highlights that the RETSL provides greater pre-sale protections through stricter and more extensive notice requirements, including specific procedures to locate the property owner and others, not applicable to the MCTLA.[15] Saratoga's Brief at 17 (comparing Pa.R.C.P. 3129.2(b) (governing the posting of notice via handbills applicable to the MCTLA) with 72 P.S. § 5860.102 (defining "posting" by setting forth detailed criteria to provide conspicuous notice to both the owner and the public for sales pursuant to the RETSL)); *id.* at 18 (comparing Pa.R.C.P. 3129.1 and 3129.2(c) (addressing service of written notice applicable to the MCTLA) with the enhanced provisions of the RETSL, under 72 P.S. § 5860.607a(a) (requiring "additional notification efforts" to locate and provide notice to

---

[15] Saratoga observes that the Pennsylvania Rules of Civil Procedure govern the relevant notice requirements for the MCTLA. Specifically, Pa.R.C.P. 3190 instructs that "[a] judgment *in rem* in an action or proceeding upon a . . . municipal claim [or] tax claim . . . shall be enforced against the real property subject to the lien [or] claim . . . in accordance with Rules 3180 to 3183 governing the enforcement of judgments in mortgage foreclosure." Pa.R.C.P. 3181(a)(6), in turn, instructs that notice should be given in accordance with Pa.R.C.P. 3129.1 through 3129.3. The RETSL is specifically exempted from this mandate, such that the RETSL's notice procedures are still applicable. Pa.R.C.P. 3191(a)(2)(viii).

various persons or entities "likely to be significantly affected" by the tax sale, including documentation of such efforts)). Saratoga also highlights more exacting requirements for service on the owner under the RETSL. *Id.* at 19-20 (contrasting service of notice upon the owner pursuant to Pa.R.C.P. 402(a) and 403 (applicable to the MCTLA as incorporated by Pa.R.C.P. 3129.2(c)(1)(i)) with 72 P.S. § 5860.601(a)(3) applicable to the RETSL, providing specific notice for owner-occupied properties).

Critically, Saratoga emphasizes the differences between the RETSL and the MCTLA relating to an owner's ability to retain or regain title to her property. While the MCTLA provides a post-sale remedy of redemption, the RETSL provides pre-sale protection by allowing an owner to stay the tax sale by paying twenty-five percent of the delinquent taxes prior to the scheduled sale and agreeing to an installment plan to pay the remainder within one year, pursuant to 72 P.S. § 5860.603, set forth *supra* at 6 n.8.

In light of these differences, Saratoga surmises that it is "reasonable to hypothesize that the inclusion of a redemption provision in MCTLA - and the omission of one from RETSL - was crafted to account for the fact that it is much more likely that the owner of a property will appear after an MCTLA upset sale having not had notice of the sale or an opportunity to gather the necessary funds to satisfy the tax lien and remove the property from sale." Saratoga's Brief at 22. Moreover, it suggests that RETSL's pre-sale ability to stay the tax sale and the MCTLA's post-sale right of redemption serve similar purposes in providing "breathing room" to the property owner. *Id.* at 23.

Saratoga argues that there are also differences regarding the finality of the tax sales and the delivery of the deed to the purchaser. Under the MCTLA, the deed is delivered upon the sale, and the prior owner cannot challenge the judgement underlying the sale. Saratoga's Brief at 23-24 (citing 53 P.S. §§ 7293, 7281). In such cases, Saratoga contends, the redemption provision "serves as an effective means to reverse"

an upset tax sale. *Id.* at 24. In contrast, under the RETSL, the deed is issued only after a court confirms the sale, prior to which the owner can challenge aspects of the sale. *Id.* at 23 (citing 72 P.S. § 5860.608); see also 72 P.S. § 5860.607(d).

In summary, Saratoga asserts that "the inclusion of enhanced procedures to guarantee notice, an opportunity to stay the sale by making installment payments on the tax debt, and the right to attack the procedural integrity of the sale before a sheriff's deed is issued" provides a rational basis for the Legislature to remove what Saratoga argues would result in "a largely redundant means for an owner to prevent or undo the effect of an upset sale." Saratoga Brief at 26.

In addressing the Fouses' constitutional challenge, we initially recognize that the Fouses "carr[y] a heavy burden" challenging the constitutional validity of the RETSL's prohibition against post-sale redemption. *Sands Bethworks Gaming, LLC v. Pennsylvania Dep't of Revenue*, 207 A.3d 315, 319 (Pa. 2019). We reiterate that "[a]ll duly enacted legislation enjoys a strong presumption of validity, and will only be declared void if it violates the Constitution clearly, palpably and plainly." *Id.* (internal citations and quotation marks omitted).

The Fouses challenge the RETSL's redemption prohibition under the equal protection provisions of the federal and state constitutions.[16] In its most simplistic

---

[16] The Fouses, however, do not argue that the equal protection analysis differs under the two charters. Accordingly, we will not address any potential distinctions other than to acknowledge that this Court has previously recognized the difference in language utilized in the charters but proceeded to apply the same analytical tests to both texts. *See Zauflik v. Pennsbury School Dist.*, 104 A.3d 1096, 1117 n.10 (Pa. 2014).

In relevant part, the Fourteenth Amendment to the United States Constitution provides,

No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States;

formulation, equal protection "demands that uniform treatment be given to similarly situated parties." *Zauflik v. Pennsbury School Dist.*, 104 A.3d 1096, 1117 (Pa. 2014) (citation omitted).  Our constitutions have long been interpreted, nevertheless, to permit the legislative branches to draw classifications so long as they are properly justified.  *Id.* The required justification depends "upon which of three types a classification belongs to, what the governmental interest is in promulgating the classification, and the relationship of that interest to the classification itself." *Id.* at 1117-18.  Fundamental rights and suspect classifications trigger strict scrutiny, whereas important rights and sensitive classifications require intermediate scrutiny.  *Id. at 1118.*  All other legislative classifications are subject to rational basis review.  *Id.*

The Fouses initially argue for the application of strict scrutiny claiming that the lack of a redemption provision violated their property rights, which they view to be fundamental

---

> nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. CONST., amend. XIV, § 1.  Pennsylvania provides similar protection through Article I, Section 1, addressing, *inter alia*, equal rights, and Section 26, providing protection against discrimination:

> All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness.

PA CONST. Art. I, § 1.

> Neither the Commonwealth nor any political subdivision thereof shall deny to any person the enjoyment of any civil right, nor discriminate against any person in the exercise of any civil right.

*Id.* § 26.

rights. They rely in support on Pennsylvania's inclusion of the right "of acquiring, possessing and protecting property" as an "inherent and indefeasible right" in Article I, Section 1, and they assert that this encompasses their asserted "right to reclaim their property upon payment of all costs." Fouses' Brief at 9.

After consideration, we conclude that the asserted right is not a fundamental constitutional right but, instead, a statutory remedy, provided as part of a legislative tax collection process. In so doing, we emphasize that the legislative branch has broad discretion in regard to tax collection, based in part on the "importance of the tax collection process to the perpetuation and continuing vitality of government." *Cedarbrook Realty, Inc.*, 399 A.2d at 377. Indeed, we have opined that statutes "authorizing the assessment of municipal taxes, the creation of liens therefor, the sale of lands to satisfy the liens, and the time of redemption given to owners, constitute together [a] system of remedies for enforcing the taxing power - [of] which there is no clearer power in the constitution." *Bernitsky*, 112 A.2d at 122 (quoting *Appeal of Gault*, 33 Pa. 94, 100 (Pa. 1859)). This Court has additionally opined that the right of redemption within a tax collection statute is not a vested right but rather merely a "right subject to the control of the Legislature."[17] *Id.* at 123. In the shadow of the clear legislative authority to structure the tax collection process, the Fouses provide no textual or historical argument supporting a constitutionally-enshrined right to redeem their property by paying delinquent taxes and

---

[17] In *Bernitsky*, this Court addressed a claim by property owners who had purchased a tract of land only to later discover that it had been subject to a tax sale years prior. The property owners attempted to assert a vested right to utilize a redemption provision that existed under the tax collection statute in effect at the time of the tax sale, despite the subsequent enactment of the RETSL, which prohibited redemption. They claimed that it would violate the constitution to divest them of their "right to redemption." The Court opined that the "right of redemption was not a vested right." *Bernitsky*, 112 A.2d at 123. It further observed that the "[r]ight of redemption did not exist at common law [but] was created by statute." *Id.*

costs after an upset sale. Absent the identification of a constitutionally-protected right triggering an increased level of scrutiny, we conclude that rational basis review applies to the equal protection challenge raised herein.

As we have often recounted, "rational-basis review in equal protection analysis is not a license for courts to judge the wisdom, fairness, or logic of legislative choices." *Shoul v. Commonwealth, Dep't of Transp. Bureau of Driver Licensing*, 173 A.3d 669, 677 (Pa. 2017) (quoting *Heller v. Doe*, 509 U.S. 312, 319 (1993)). Instead, the rational basis test affords substantial deference to legislative policy making. The review includes two steps: "First we must determine whether the challenged statute seeks to promote any legitimate state interest or public value. If so, we must next determine whether the classification adopted in the legislation is reasonably related to accomplishing that articulated state interest or interests." *Curtis*, 666 A.2d at 269.

Under rational basis review, the relationship between the classification and the legitimate state interest need not be set forth expressly by the Legislature. *Shoul*, 173 A.3d at 677 (quoting *Heller*, 509 U.S. at 320-21). Moreover, courts have recognized that legislative classifications are enacted to address complex issues that may not have clear cut solutions. Accordingly, courts have opined that "[a] classification does not fail rational-basis review because it is not made with mathematical nicety or because in practice it results in some inequality." *Id.* at 321. Indeed, given the complexity of taxation policy, "legislatures have especially broad latitude in creating classifications and distinctions in tax statutes." *Armour v. City of Indianapolis,* 566 U.S. 673, 680 (2012).

Applying these precepts to the question before the Court, we first consider whether the Legislature had a legitimate interest in enacting the RETSL's prohibition against redemption. As noted above, we recognize that tax collection statutes serve the legitimate and, indeed, critical purpose of funding government by providing "prompt and

certain availability" of assessed taxes. *Cedarbrook Realty, Inc.,* 399 A.2d at 377 (quoting *Bull v. United States*, 295 U.S. 247, 259-60 (1935) (observing that "taxes are the life-blood of government, and their prompt and certain availability an imperious need")); *Bernitsky*, 112 A.2d at 122 (recognizing that "[s]tates and cities cannot exist without taxation"). In regard to the RETSL specifically, this Court has opined that the purpose of the RETSL is "to expedite the collection of delinquent real estate taxes, to retain the productivity of the real estate, and to maintain economic value." *Bernitsky*, 112 A.2d at 122. We have little hesitation in concluding that these are legitimate state interests.

We next consider whether the legislative decision to include a redemption remedy in the MCTLA but exclude it from the RETSL is rationally related to the legitimate government purpose of expediting the collection of delinquent real estate taxes. We agree with the courts below and Saratoga that the lack of a redemption provision in the RETSL promotes the legislative interest in facilitating the collection of delinquent taxes by ensuring certainty and finality for tax sales, which, in turn, likely encourages higher bids based on the greater security provided to the purchaser.

We additionally reject the implicit suggestion that the MCTLA provides greater protection to delinquent taxpayers than the RETSL. Rather than looking myopically at the inclusion or exclusion of a redemption remedy, a broader consideration shows that both statutes offer protections to the delinquent taxpayer, with the RETSL utilizing greater pre-sale protections, whereas the MCTLA focuses on post-sale remedies. Most significantly, while the MCTLA allows delinquent taxpayers nine months to pay their taxes to regain ownership of their properties, the RETSL grants delinquent taxpayers twelve months to pay their taxes to prevent the loss of ownership, so long as they pay twenty-five percent of the taxes prior to the date of sale. *Compare* 53 P.S. § 7293 (MCTLA redemption provision) *with* 72 P.S. § 5860.603 (RETSL removal from sale provision).

These provisions contain trade-offs for all stakeholders. For the delinquent taxpayer, one system provides twelve rather than nine months from the scheduled sale to satisfy the delinquent taxes, but requires a quarter of the total to be paid prior to the scheduled sale. The purchaser takes on greater risk in buying a property under the MCTLA, given the potential post-sale redemption, but likely pays a lower price to compensate for the higher risk. The taxing district under the RETSL must wait a year to determine if the taxpayer will meet its obligation to repay the full amount of delinquent taxes, but is provided twenty-five percent in advance and likely receives higher bids for those properties which go to sale, due to the lower risk given the prohibition on redemption in the RETSL.

Moreover, various reasons have been proposed for why one system is more advantageous for rural or urban counties in maximizing the collection of delinquent taxes, which all agree is a legitimate state interest. The rationality of these explanations are not undermined, as suggested by the Fouses and the dissent in the Commonwealth Court, by the statutory provision allowing tax bureaus in the less populated counties to opt into the MCTLA. That an individual county deems one of the systems more advantageous to that county's specific situation does not undermine the legislative determination that, generally, the RETSL system is better suited for more rural counties.

We again emphasize that "[t]he time, the mode, and the measure of taxation, are committed altogether and exclusively to the legislative discretion." *Bernitsky*, 112 A.2d at 122 (quoting *In re Gault*, 33 Pa. at 100). We conclude that the dichotomy between those landholders subject to the RETSL rather than the MCTLA does not violate equal protection, under either the federal or state constitution, because the choice is rationally related to the legislative determination of which system will maximize the collection of

delinquent taxes for different types of counties. *See* PA. CONST. Art. III, § 20 (expressly granting the Legislature the "power to classify counties . . . according to population . . .").

As we conclude that the Fouses failed to demonstrate that the RETSL's prohibition against post-sale redemption clearly, plainly, and palpably violates the equal protection provisions of the United States or Pennsylvania Constitutions, we affirm the Commonwealth Court's order approving the trial court's denial of the Fouses' Petition to Redeem.

Chief Justice Saylor and Justices Todd, Donohue, Dougherty, Wecht and Mundy join the opinion.