**[J-46-2025]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

**TODD, C.J., DONOHUE, DOUGHERTY, WECHT, MUNDY, BROBSON, McCAFFERY, JJ.**

| | |
|---|---|
| IN RE: UPSET SALE, TAX CLAIM BUREAU OF TIOGA COUNTY, CONTROL NO. 012488 | : No. 51 MAP 2024 : : |
| | : Appeal from the Order of the |
| MARTIN J. OSTAPOWICZ, | : Commonwealth Court at No. 1285 : CD 2022, entered on November 6, |
| Appellant | : 2023, Affirming the Order of the : Tioga County Court of Common |
| v. | : Pleas, Civil Division, at No. 606 CV : 2021, entered on October 12, 2022 |
| TIOGA COUNTY TAX CLAIM BUREAU, | : : ARGUED: May 30, 2025 |
| Appellee | : |

**OPINION**

**CHIEF JUSTICE TODD**                 **DECIDED: January 21, 2026**

We granted review in this matter to consider whether the trial court properly upheld an upset tax sale, conducted pursuant to the Real Estate Tax Sale Law ("RETSL"),[1] where the sale price of the subject property was approximately 18% of the property's appraised fair market value. We hold that the trial court properly upheld the sale, albeit for reasons different than those articulated by the lower courts, and, thus, we affirm the Commonwealth Court's decision.

**I. Factual and Procedural History**

Appellant Martin J. Ostapowicz was the owner of a 52.77-acre parcel of real property in Morris Township, Tioga County (the "Property"), on which his home was

_____

[1] 72 P.S. § 5860.101 *et seq*.

situated. According to Appellant, the Property had a fair market value of $465,000.[2] On September 24, 2021, following Appellant's repeated failures to pay real estate taxes, the Tioga County Tax Claim Bureau (the "Bureau") sold the Property at an upset tax sale. The "upset price"[3] for the Property at the time of the sale was $11,416.14, and the Property ultimately sold for $83,000, which was approximately 18% of its fair market value according to Appellant's appraisal.

Thereafter, Appellant filed a series of objections to the sale. Relevant herein, in his initial objections, Appellant averred that the Bureau "failed to comply with the notice requirements" set forth in Section 5860.602 of the RETSL. Objections/Exceptions to Tax Sale Held September 24, 2021, 10/6/21 (R.R. 6a-8a). In his first amended objections, Appellant argued that the RETSL violates the United States and Pennsylvania Constitutions because "the sale constitutes a 'taking' of real property without just compensation;" the notice requirements set forth in the RETSL are "inadequate and the resulting sale is violative of procedural due process;" and the RETSL allows the government to sell a landowner's property to satisfy a tax claim "that is miniscule when compared to the value of the property forfeited, thus violating substantive due process." First Amended Objections/Exceptions to Tax Sale Held September 24, 2021, 11/5/21 (R.R. 37a). Appellant filed his final "Objections/Exceptions to Tax Sale" on December 9, 2021, following the trial court's entry of a Decree Nisi on November 17, 2021. Timothy

---

[2] This figure is based on an appraisal of the Property conducted on November 24, 2021, by Dean Appraisal Service. Appellant obtained the appraisal after the upset tax sale for the purpose of the hearing on his objections and exceptions to the sale.

[3] When a property is offered for sale at an upset tax sale due to the owner's failure to pay taxes, the "upset price" represents "the total sum of the taxes owed plus any tax liens and municipal claims." *In re Adams Cnty. Tax Claim Bureau*, 200 A.3d 622, 623 n.1 (Pa. Cmwlth. 2018); 72 P.S. § 5860.605.

Smith, who purchased the Property at the upset tax sale, was granted intervenor status by the trial court.

At a hearing on Appellant's objections, the director of the Bureau and chief assessor for Tioga County, Joshua Zeyn, explained that Appellant had a long history of failing to pay taxes on the Property, as the Bureau's tax history report indicated that Appellant had been delinquent on his taxes every year since 2004. Zeyn further testified that, contrary to Appellant's assertions, the Bureau fully complied with the notice and service requirements of the RETSL. Specifically, with respect to Section 5860.602(e), which sets forth the written notice requirements,[4] Zeyn indicated that, on March 3, 2020, the Bureau sent Appellant, by restricted mail, a Notice of Return and Claim, which provided Appellant with information regarding the amount of taxes and interest due on the Property through March 31, 2020, and advised him of the consequences of nonpayment, but that the notice was returned to the Bureau as undeliverable.

Zeyn also testified that, on July 14, 2021, the Bureau sent Appellant, by restricted mail, a Notice of Public Tax Sale, advising him that an upset tax sale was scheduled for the Property at 10:00 a.m. on September 24, 2021. The Notice of Public Tax Sale informed Appellant that he had until July 30, 2021 to pay, or set up an agreement to pay,

---

[4] Section 5860.602(e)(1) of the RETSL requires that the Bureau give notice of the scheduled sale to each owner at least 30 days prior thereto "by United States certified mail, restricted delivery, return receipt requested, postage prepaid." 72 P.S. § 5860.602(e)(1). "Restricted Delivery" allows the mailer to direct delivery only to the addressee or the addressee's authorized agent. *See What is Restricted Delivery?*, United States Postal Service, https://faq.usps.com/s/article/What-is-Restricted-Delivery. If return receipt is not received from each owner pursuant to Section 5860.602(e)(1), the Borough must provide, at least 10 days before the date of the upset tax sale, similar notice "to each owner who failed to acknowledge the first notice by United States first class mail, proof of mailing, at his last known post office address by virtue of the knowledge and information possessed by the bureau, by the tax collector for the taxing district making the return and by the county office responsible for assessments and revisions of taxes." 72 P.S. § 5860.602(e)(2).

the Property's outstanding taxes in order to avoid advertisement of the upset tax sale. The notice contained the following warning: "Your property is about to be sold without your consent for delinquent taxes. Your property may be sold for a small fraction of its fair market value." (R.R. at 30a). However, the notice was returned to the Bureau as unclaimed, and, as a result, the Bureau completed a proof of mailing on September 10, 2021, documenting that it had mailed the notice to Appellant.

Zeyn testified that, on September 8, 2021, the Bureau mailed Appellant a Final Notice, once again informing him of the outstanding tax balance on the Property, and the scheduled date and time of the upset tax sale. The Final Notice advised Appellant that he had until 3:30 p.m. on September 23, 2021 to pay the Property's outstanding 2019 taxes in order to avoid the upset tax sale. The Final Notice was not returned as undeliverable.[5]

Additionally, Zeyn testified that notice of the scheduled upset tax sale was physically posted to Appellant's Property by a processing agent, Evelyn Laughlin, on June 14, 2021, as required under Section 5860.602(e)(3) of the RETSL.[6] He also explained

---

[5] In addition to the notices described above, Zeyn testified that the Bureau sent Appellant several notices regarding the Property's outstanding taxes and the scheduled upset tax sale that were not expressly required by the RETSL. Specifically, Zeyn recounted that, on February 4, 2020, the Borough sent Appellant a notice informing him that his 2019 property taxes were delinquent; on November 5, 2020, the Bureau mailed Appellant an Open Billing Letter, which detailed the Property's outstanding taxes for 2019, and described the available payment options and instructions for seeking an agreement to stay the sale (in actuality, Appellant was not eligible to enter an agreement to stay the sale because he previously defaulted on such an agreement in connection with the Property's 2018 delinquent taxes); and, on April 1, 2021, the Bureau sent Appellant a notice which advised him of the amount of his outstanding tax liability for the Property, and informed him of his payment options, the due dates for payment, and the consequences for nonpayment. The first two notices were returned to the Bureau as undeliverable, and the Bureau received no response from Appellant with respect to the third notice.

[6] Section 5860.602(e)(3) provides that "[e]ach property scheduled for sale shall be posted at least ten (10) days prior to the sale." 72 P.S. § 5860.602(e)(3). Section 5860.102 of (continued…)

that Laughlin attempted to personally serve notice to Appellant, as required under Section 5860.601(a)(3),[7] on June 14 and June 17, 2021, but was unsuccessful. However, Laughlin succeeded in serving notice to Appellant on June 18, 2021. Zeyn's testimony in this regard was supported by the deposition testimony of Laughlin, which was admitted into evidence. In her deposition, Laughlin attested that she posted the Property on June 14, 2021 by placing a notice on a wire stake, which was secured by two holders, at the end of the Property's driveway, as the house was not visible from the road. Laughlin explained that the posted notice was not obscured by bushes or trees, and was conspicuous from the road and upon entering the Property, and that she took a picture of the posted notice, which became part of the Bureau's field report. Laughlin also confirmed that she unsuccessfully attempted to personally serve notice on Appellant twice before she was successful in doing so on June 18, 2021.

Finally, Zeyn relayed that Appellant contacted the Bureau by telephone on September 1, 2021, to inquire as to the amount of payment required to avoid the upset tax sale. Appellant was informed that he needed to pay $2,595.50 in certified funds prior to 3:30 p.m. on September 23, 2021, in order to halt the sale. Appellant, however, failed to make payment.

In response to the evidence offered by the Bureau, Appellant testified that he never saw the posted notice at the Property, did not see the advertisement of the upset tax sale

---

the RETSL defines "posting" as the affixation of a notice to a stake located on or adjacent to the property "in a manner situated to be reasonably conspicuous to both the owner and the general public." *Id.* § 5860.102(1)(ii).

[7] Pursuant to Section 5860.601(a)(3), if a property intended for an upset tax sale is occupied by the owner, each owner-occupant must receive written notice of the impending tax sale by personal service.

in any publication,[8] did not recall receiving any notices about the sale, and was not made aware of the impending sale from anyone who used the Property's driveway. Appellant further claimed that he did not recall being personally served with notice of the upset tax sale on June 18, 2021, alleging that he first learned of the scheduled sale from his real estate agent on September 24, 2021, the day of the sale. According to Appellant, at that time, he went directly to the Bureau with money to pay the delinquent taxes, but was told that he was too late, and that the Property had been sold. Appellant also presented testimony from his son and daughter, as well as an employee, all of whom stated that they used the Property's driveway multiple times per week, but never saw the posted notice at the end of the driveway.

The trial court denied Appellant's objections, concluding that the Bureau established that Appellant was given proper notice of the upset tax sale, that Appellant personally was served with notice of the scheduled sale, and that notice was properly posted at the Property. Notably, the trial court expressly credited the testimony of Zeyn and Laughlin, and found Appellant's testimony not to be credible. The trial court also determined that there was no legal basis for granting Appellant relief in connection with the allegedly inadequate sale price of the Property. Appellant filed an appeal with the Commonwealth Court, reiterating his claims that the Bureau failed to adhere to the RETSL's notice and posting requirements, and that the Property was sold for a grossly inadequate price.

_____

[8] Section 5860.602(a) requires that the Bureau, at least 30 days prior to any scheduled sale, provide notice via publication in two different newspapers of general circulation in the county, and via publication in the legal journal designated by the court. Such notice must include the purpose, time, and place of the sale; the terms of the sale, including the approximate upset price; and descriptions of the properties, as stated in the claims entered, and the name of the owner. Herein, Appellant does not challenge the Bureau's compliance with this requirement.

In a unanimous opinion authored by Judge Christine Fizzano Cannon, the Commonwealth Court affirmed. *In re Upset Sale, Tax Claim Bureau of Tioga Cnty., Control No. 012488*, 305 A.3d 1118 (Pa. Cmwlth. 2023) ("*Upset Sale*"). After examining the service and notice requirements of Sections 5860.601 and 5860.602 of the RETSL, the court concluded that the record evidence established that Appellant received proper notice of the upset tax sale through publication, posting, mail, and personal service. Specifically, the court recounted the testimony of Zeyn and Laughlin that notice was posted at the Property on June 14, 2021, and that Laughlin personally served Appellant with notice on June 18, 2021. In this respect, the court observed that the trial court found the testimony of Zeyn and Laughlin to be credible, and noted that it was bound by the trial court's credibility determinations. The court further determined that the documentary exhibits that were entered into evidence demonstrated that the Bureau notified Appellant of the impending sale by mail and through publication, in accordance with the requirements of the RETSL. Thus, the court held that the trial court did not err in refusing to set aside the upset tax sale based on Appellant's claims that the Bureau failed to comply with the RETSL.

The Commonwealth Court likewise rejected Appellant's argument that he was entitled to equitable relief because the Property's sale price was grossly inadequate. In this regard, the court recognized that properties sold at upset tax sales must be sold for equal to or greater than the upset price. *See* 72 P.S. § 5860.605 ("No sale of property shall be made by the bureau unless a bid equal to the upset price is made."). The court further observed that "Pennsylvania courts have held that, in cases challenging tax sales on the basis of the adequacy of the sale price, the mere alleged inadequacy of the sale price, standing alone, is not a sufficient basis upon which to set aside the sale." *Upset*

*Sale*, 305 A.3d at 1126 (citing *Mathias v. York Cnty. Tax Claim Bureau*, 283 A.3d 899 (Pa. Cmwlth. filed July 8, 2022) (table) (unpublished memorandum opinion)).

Nevertheless, the court noted that, "[w]hile cases involving grossly inadequate sales prices typically involve sheriffs' sales in mortgage foreclosure actions, the grossly inadequate price may also be examined as a basis to set aside tax sales where irregularities in the sale contribute to the grossly inadequate price." *Id.* at 1126-27 (citing *Hart v. Bulldawg, LLC and City of Phila., Dep't of Revenue*, 2017 WL 582735 (Pa. Cmwlth. filed Feb. 14, 2017) (unpublished memorandum opinion)). The Commonwealth Court recognized, however, that in such cases, courts have deemed a sale price to be grossly inadequate when the "sale price was a small percentage – roughly ten percent or less – of the established market value." *Id.* at 1127 (quoting *Bank of Am., N.A. v. Estate of Hood*, 47 A.3d 1208, 1212 (Pa. Super. 2012)). Moreover, the court emphasized that a presumption exists that the price received at a public sale is the highest and best available. *Id.* (quoting *City of Phila. v. Hart*, 224 A.3d 815, 822 (Pa. Cmwlth. 2020)). Concluding that Appellant failed to establish that a sale price of 18% of the fair market value of the Property was grossly inadequate, the court held that Appellant was not entitled to equitable relief based on the sale price of the Property, and it affirmed the trial court's order.

We granted Appellant's petition for allowance of appeal to determine whether the lower courts "err[ed] in affirming a county tax sale of real estate where the successful bid at the sale of [the] home was approximately 18 percent of its appraised fair market value." *In re Upset Sale, Tax Claim Bureau of Tioga Cnty., Control No. 012488,* 321 A.3d 871 (Pa. filed July 1, 2024) (order).

Preliminarily, we note that, in granting Appellant's request for review, we specifically directed the parties to discuss in their briefs this Court's decision in *First*

*Federal Savings & Loan Association of Lancaster v. Swift*, 321 A.2d 895 (Pa. 1974) ("*Swift*"). In *Swift*, a bank failed to pay taxes on a parcel of land on which it held a mortgage, and, as a result, the property, which was valued at nearly $6,000, was scheduled to be sold at a public judicial sale[9] on October 23, 1971. According to the bank, several weeks prior to the scheduled date of the sale, an employee of the Lancaster Redevelopment Authority ("LRD"), which was contemplating purchase of the property, went to the tax claim bureau and requested a list of upcoming tax sales, without specifying a date. The employee was provided with a list of sales scheduled for October 30, 1971. Not seeing the bank's property on the list, the employee informed the bank that the property would not be sold on October 23, 1971. Despite having received official notice of the actual date of sale, the bank relied on the employee's statement, and instructed its attorney not to appear at the October 23rd sale. Swift purchased the property for $5, plus taxes in the amount of $329.46.

The bank filed a complaint in equity seeking to set aside the sale based on an alleged unilateral mistake of fact, specifically, its reliance on the LRD employee's erroneous statement that the property would not be put up for sale on the scheduled date. While acknowledging that there was no legal basis for setting aside the sale given that the judicial sale was advertised and conducted in accordance with the requirements of the RETSL, the chancellor granted the bank's request for equitable relief and set aside the judicial sale.

---

[9] Under the RETSL, properties are initially subject to upset tax sales, during which they are placed for sale subject to any existing liens, mortgages, and burdens. *See* 72 P.S. § 5860.609. If, however, a property does not sell at the upset tax sale, a court may order that the property be sold at a judicial tax sale, wherein the property is "freed and cleared of all tax and municipal claims, mortgages, liens, charges and estates, except separately taxed ground rents." *Id.* § 5860.612(a).

Justice Roberts authored a plurality opinion, joined by Justice Manderino, reversing the grant of equitable relief. In doing so, he explained that, because the parties' rights were specifically established by the RETSL, the statute was the sole authority governing the sale, and equity could not change the outcome of the matter because "equity follows the law." *Id.* at 898. He elaborated:

> The rights of all parties to a tax sale are defined and governed by statute. '(W)henever there is a direct rule of law governing the case in all its circumstances, the (equity) court is as much bound by it as would be a court of law . . . . Where, as here, the parties' rights are regulated and fixed by a comprehensive scheme of legislation, the maxim 'equity follows the law' is entitled to the greatest deference.

*Id.* (citations omitted).

Pointing to the bank's failure to take any steps to verify the accuracy of the employee's statement that the property was not listed for judicial tax sale on the scheduled date, Justice Roberts further noted that courts of equity "will not relieve a party from the consequences of an error due to his own ignorance or carelessness when there were available means which would have enabled him to avoid the mistake if reasonable care had been exercised." *Id.*

Additionally, Justice Roberts observed that the chancellor was concerned about the adequacy of the purchase price, as evidenced by his statements at the hearing on the bank's motion that he did not know whether the sale was "a good sale" or "a steal," and his reference to the principle of unjust enrichment in his opinion. *Id.* at 897 n.4. He admonished that the RETSL provides that, at a judicial sale, the property must be sold to the highest bidder, unless a minimum bid set by the court is not met, and that "it is presumed that the price received at a duly-advertised public sale is the highest and best obtainable." *Id.* Justice Nix concurred in the result.

Justice Eagen wrote a concurring opinion, suggesting that the majority failed "to recognize the basic premise, here involved, that []gross inadequacy of price is sufficient basis, in itself, for setting aside a sheriff's (judicial) sale," and he opined that the price paid for the bank's property was "grossly inadequate." *Id.* at 899 (Eagen, J., concurring). Justice Eagan further opined that the majority's statement that the RETSL "is the sole authority governing the sale of this land for delinquent taxes," was "clearly an overreading of the legislative intent behind the passage of this Act," and he maintained that the RETSL was "merely an attempt [by the legislature] to [p]artially codify this area of the law," and was not intended to "eliminate all remnants of the common law from being applied." *Id*. However, notwithstanding his conclusion that "gross inadequacy" remains a "consideration in delinquent tax sales," Justice Eagen agreed with the majority's determination that the unilateral mistake of fact alleged by the bank was not a basis for equitable relief. *Id.* at 899-900.

Justice Pomeroy filed a dissenting opinion, which was joined by Justice O'Brien, declaring that "gross inadequacy of price has long been recognized as a sufficient basis, in itself, for setting aside a sheriff's sale," and "the fact that the sale was accomplished in conformity with the procedures of the [RETSL] does not insulate it from timely attack where no competing equities are involved, and the parties can be restored to their original positions. This is such a case." *Id.* at 900 (Pomeroy, J., dissenting) (internal footnote omitted).

## II. Arguments

We now turn to the arguments of the parties in this case. Seemingly conceding that "[t]he combination of [this Court's holding in *Swift*] and the [RETSL] completely shuts the door to a citizen's right to question the validity of a tax sale based upon an argument of wholly inadequate consideration received as a result therefrom," Appellant's Brief at

13-14, Appellant contends that courts must balance an individual's right under Article I, Section 1 of the Pennsylvania Constitution to possess and protect property "against the Commonwealth's police power," *id.* at 19.[10] Appellant maintains that, because he arrived "within hours after his property had been sold, ready, willing and able to pay all back taxes," the court should have set aside the sale, which would have resulted in the Bureau recovering the taxes owed by Appellant, while allowing Appellant to retain his Property. *Id.* at 20. To this end, Appellant submits that courts may use their powers of equity to grant relief from "acts of public officials when done in an arbitrary or capricious manner or in a manner in violation of the law," and he suggests there is nothing "more arbitrary or capricious than for the government to deprive a landowner of his home to collect taxes where the landowner receives a small percentage of the value of that home at the end of the process." *Id.* at 32.

Appellant next argues that, pursuant to the language of Section 5860.607 of the RETSL, he is entitled to challenge the sale price of the Property. Section 5860.607 provides, in relevant part:

> (d) Any objections or exceptions to such a sale may question the regularity or legality of the proceedings of the bureau in respect to such sale, but may not raise the legality of the taxes on which the sale was held, of the return by the tax collector to the bureau or of the claim entered. In case any objections or exceptions are filed they shall be disposed of according to the practice of the court. If the same are overruled or set aside, a decree of absolute confirmation shall be entered by the court.
>
> * * *

---

[10] Notably, Appellant does not challenge the RETSL as unconstitutional, or raise a claim under the Takings Clause of the United States or Pennsylvania Constitutions. *See* U.S. Const. amend. V ("[N]or shall private property be taken for public use, without just compensation."); Pa. Const. art. I, § 10 ("[N]or shall private property be taken or applied to public use, without authority of law and without just compensation being first made or secured.").

(g) If no objections or exceptions are filed or if objections or exceptions are finally overruled and the sale confirmed absolutely, the validity of the tax, its return for nonpayment, the entry of the claim, or the making of such claim absolute and the proceedings of the bureau with respect to such sale, shall not thereafter be inquired into judicially in equity or by civil proceedings by the person in whose name such property was sold, by a grantee or assignee, by any lien creditor or by any other person, except with respect to the giving of notice under the act, to the time of holding the sale, or to the time of petitioning the court for an order of sale. There shall be no period of redemption after such sale and the sale shall be deemed to pass a good and valid title to the purchaser, free from any liens or encumbrances whatsoever, except such liens as are hereafter specifically saved, and in all respects as valid and effective as if acquired by a sheriff's deed.

72 P.S. § 5860.607(d), (g).

Appellant submits that the legislature, in permitting a landowner to file objections or exceptions to an upset tax sale to question the "regularity or legality of the proceedings," *see id.* § 5860.607(d), intended that a landowner be allowed to challenge a sale based on issues other than those relating to mailed notices, publication, posting, and personal service, and he maintains that an inadequate sale price constitutes an irregularity under Section 5860.607(d).

Additionally, Appellant argues that the instant case "abounds with irregularities," Appellant's Brief at 33, reiterating the arguments he made before the Commonwealth Court that there was no testimony or evidence to support the trial court's conclusion that a posted notice was properly affixed to the Property on June 14, 2021, and there was no proof that he was personally served with notice of the scheduled upset tax sale.

Finally, Appellant avers that both this Court and the Commonwealth Court have recognized that, even absent any irregularities in a sale, "gross inadequacy of price is a sufficient basis in itself for setting aside a sheriff's sale," *id.* at 28 (citing *Capozzi v. Antonoplos*, 201 A.2d 420, 422 (Pa. 1964) (evidence that sale price of stock certificates

was grossly inadequate was sufficient basis for setting aside a sheriff's sale of those certificates); *Mathias, supra*), and he argues that it would be illogical to apply a different standard in the context of upset tax sales than in sheriffs' sales.

The Bureau responds first by submitting that neither the majority nor the dissenting opinions in *Swift* have any bearing on the outcome of this case because, unlike *Swift*, there is no mistake of fact alleged in the instant case. That said, the Bureau emphasizes the overarching holding of *Swift* that "[e]quity follows the law," *Swift*, 321 A.2d at 897, and asserts that, because "the rights of the parties are specifically established in the RETSL," when the Bureau has complied with the requirements of the RETSL, "equity cannot come to the rescue." Bureau's Brief at 12. In particular, the Bureau reiterates that the evidence established that it provided Appellant with proper notice of the upset tax sale through publication, posting, mail, and personal service.

The Bureau further argues that, given its compliance with the RETSL, and case law which holds that an alleged inadequacy in sale price is not a valid basis for setting aside an upset tax sale, Appellant has failed to establish any basis upon which the trial court should have set aside the sale. Indeed, the Bureau suggests that, even if the trial court could have exercised its equitable powers, it had every reason not to do so in light of Appellant's longstanding delinquencies in paying taxes on the Property, which date back to 2004, and his "tax avoidance schemes, sham tax payment efforts, and shell games with the mail," which have required the Bureau, year after year, to expend "time, energy, and resources" to attempt to collect taxes from him. *Id.* at 20.

Finally, with respect to Appellant's argument that the dissenting opinion in *Swift* supports setting aside the upset tax sale of the Property in this case because of a gross inadequacy in sale price, the Bureau highlights that, in *Swift*, the sale price represented only 5% of the value of the property at issue, whereas, here, the Property was sold for

18% of its appraised fair market value. The Bureau contends that there is no authority to support a holding that a sale price of more than ten times the actual upset price, and "double the generally accepted ten percent or less threshold could be a basis for overturning a tax sale." *Id*. at 12.

In his brief, Intervenor first disputes that the fair market value of the Property was $465,000, and he claims that he only stipulated to the entry of the appraisal into evidence, not its accuracy. Indeed, Intervenor alleges that, in 2021, the Property had an assessed value of $103,220. *See* Tioga County assessment website data as of 3/18/22, Exhibit A to Petition to Intervene (R.R. at 52a). Regardless, Intervenor reiterates that the price obtained at a tax sale is presumed to be the highest and best attainable price, and he maintains that, even accepting that the fair market value of the Property was $465,000, Appellant was not entitled to equitable relief because there is no support for his claim that a sale price of 18% of a property's fair market value is grossly inadequate. In this regard, Intervenor echoes the Bureau's observation that, in the context of sheriffs' sales, courts have determined that a sale price is grossly inadequate when it is roughly 10% or less of a property's value, and he underscores that the price he paid for the Property was almost double that.

Further, in contrast to the position taken by the Bureau and Appellant, Intervenor suggests that *Swift* is applicable to the instant case, as the upset tax sale of the Property was conducted in strict compliance with the RETSL, rendering the *Swift* Court's observation that equity follows the law particularly apt. Intervenor further offers that, similar to the bank in *Swift*, Appellant could have avoided the upset tax sale if he had exercised reasonable care, as he was given multiple notices of his tax obligation, the date of the scheduled sale, and the steps he could take to halt the sale. Intervenor insists that Appellant "should not be relieved from the consequences of his own unilateral

carelessness," Intervenor's Brief at 13, observing that the RETSL is intended "to protect the local government against wilful [sic], persistent, long standing delinquents," *In re Consol. Reps. & Return by Tax Claims Bureau of Northumberland Cnty. of Props.*, 132 A.3d 637, 650-51 (Pa. Cmwlth. 2016) (citation omitted; brackets original). Finally, Intervenor suggests it would be improper for this Court to adopt Justice Pomeroy's dissenting opinion in *Swift*, as the principle of *stare decisis* should preserve the notion that equitable relief is unavailable to remedy a party's own carelessness when other parties have complied with the law, particularly given Appellant's failure to proffer any special justification for overruling *Swift*.

### III. Analysis

The purpose of tax sales "is not to strip the taxpayer of his property but to insure the collection of taxes." *Tracy v. Cnty. of Chester, Tax Claim Bureau*, 489 A.2d 1334, 1339 (Pa. 1985) (quoting *Hess v. Westerwick*, 76 A.2d 745, 748 (Pa. 1950)); *see also In re Return of Sale of Tax Claim Bureau*, *In re Ross*, 76 A.2d 749, 753 (Pa. 1950) (tax sale laws "were never meant to punish taxpayers who omitted through oversight or error (from which the best of us are never exempt) to pay their taxes. Tax acts were rather meant to protect the local government against [willful], persistent, long standing delinquents").

However, "[w]hen a property owner becomes delinquent in paying real estate taxes, a taxing bureau may conduct an upset tax sale of the property to recover the 'upset price,' which is the sum of all accrued taxes, tax liens, municipal claims, and statutory costs associated with the property." *Pan Diners, Inc. v. Monroe Cnty. Tax Claim Bureau.*, 337 A.3d 631, 635 (Pa. Cmwlth. 2025). Indeed, "the legislative branch has broad discretion in regard to tax collection, based in part on the 'importance of the tax collection process to the perpetuation and continuing vitality of government.'" *Lohr v. Saratoga Partners, L.P.,* 238 A.3d 1198, 1210 (Pa. 2020) (rejecting an equal protection challenge

based on the legislature's enactment of a provision of the RETSL which barred redemption of property after an upset tax sale, when the Municipal Claims and Tax Liens Act provided for a post-sale redemption remedy).

Nevertheless, the collection of taxes "may not be implemented without due process of law that is guaranteed in the Commonwealth and federal constitutions." *Tracy*, 489 A.2d at 1339. Such due process requires, at minimum, that an owner receive notice prior to any upset tax sale. *See In re Consol. Reps. & Return*, 132 A.3d at 644. The RETSL sets forth all of the requirements which a taxing bureau must comply with in connection with an upset tax sale. *Pan Diners*, 227 A.3d at 636.

We first address Appellant's argument that he is entitled to challenge the upset tax sale of the Property under Section 5860.607(d) of the RETSL. To reiterate, Section 5860.607(d) provides:

> (d) Any objections or exceptions to such a sale may question *the regularity or legality of the proceedings* of the bureau in respect to such sale, but may not raise the legality of the taxes on which the sale was held, of the return by the tax collector to the bureau or of the claim entered. In case any objections or exceptions are filed they shall be disposed of according to the practice of the court. If the same are overruled or set aside, a decree of absolute confirmation shall be entered by the court.

72 P.S. § 5860.607(d) (emphasis added).

Relying on the above-italicized language, Appellant submits that the case *sub judice* "abounds with irregularities," Appellant's Brief at 33, repeating the arguments he made before the Commonwealth Court. Specifically, Appellant contends that there was no testimony or evidence to support the trial court's conclusion that a posted notice was properly affixed to the Property on June 14, 2021. He further maintains there was no proof that he was personally served with notice of the scheduled upset tax sale. However,

as the finder of fact, the trial court was free to believe all, part, or none of the evidence, and to make all credibility determinations.[11] The court expressly credited the testimony of the Bureau's witnesses, found that Appellant's testimony was not credible, and determined that the Bureau complied with all of the statutory requirements of the RETSL, including posting of the Property and personal service to the landowner. Further, as the Commonwealth Court determined, the trial court's findings, including its credibility determinations, were supported by the evidence. Thus, we hold that Appellant is not entitled to relief based on his claim that the Bureau's failure to properly post the Property and personally serve him with notice constituted irregularities or illegalities in the proceedings under Section 5860.607(d).

We next consider Appellant's assertion that the legislature did not intend that the phrase "regularity or legality of the proceedings" in Section 5860.607(d) be limited to challenges regarding mailed notices, publication, posting, and personal service, but that challenges to the "regularity or legality of the proceedings" may also include claims of an inadequate sale price. Notably, however, Appellant fails to provide any legal support for his claim. Instead, he merely poses the rhetorical question, "[w]hat could be more irregular than for a tax claim bureau to deprive an owner of his constitutional right to own and possess his property and receive for the deprivation of that right approximately 18 percent of the property's value?" *Id.* at 25. Nevertheless, an examination of the language of the RETSL refutes Appellant's argument.

It is well-settled that the "object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S. § 1921(a). The legislature's will is revealed, first and foremost, by the explicit text of a statute. *Matos*

---

[11] *See Commonwealth v. Fahy,* 516 A.2d 689, 694 (Pa. 1986) (the finder of fact is free to believe all, part, or none of the evidence, and to resolve all credibility issues).

*v. Geisinger Med. Ctr.*, 334 A.3d 288, 306 (Pa. 2025). If the language of the statute is clear and free from ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit. *Id.* Further, statutory language must be read in context; in other words, in ascertaining legislative intent, "every portion of statutory language is to be read together and in conjunction with the remaining statutory language, and construed with reference to the entire statute as a whole." *Id.* (citation omitted). Accordingly, when interpreting a statute, "we must listen attentively to what the statute says, but also to what it does not say." *In re Canvassing Observation*, 241 A.3d 339, 349 (Pa. 2020).

Section 5860.607(d) states that "[a]ny objections or exceptions to [an upset tax sale] may question the *regularity or legality of the proceedings of the bureau in respect to such sale*, but may not raise the legality of the taxes on which the sale was held, of the return by the tax collector to the bureau or of the claim entered." 72 P.S. § 5860.607(d) (emphasis added); *see Zelno v. Lyons*, 245 A.3d 1185, 1187 (Pa. Cmwlth. 2012) (observing that the General Assembly, through Section 5860.607(d), limited a landowner's objections or exceptions to challenges to the "regularity or legality of the proceedings of the bureau in respect to such sale"). Appellant's claim that an allegedly inadequate sale price may be challenged under Section 5860.607(d) is unsupported by the plain language of the RETSL.

Under the Statutory Construction Act, we must interpret terms according to their common and approved usage. 1 Pa.C.S. § 1903. To discern the legislative meaning of words and phrases, our Court has on numerous occasions engaged in an examination of dictionary definitions. *See, e.g., Greenwood Gaming & Entertainment, Inc. v. Commonwealth*, 263 A.3d 611, 620-21 (Pa. 2021) (consulting dictionary definitions to ascertain meaning of phrase "personal property"); *Chamberlain v. Unemployment Compensation Board of Review*, 114 A.3d 385, 394 (Pa. 2015) (determining meaning of

term "incarcerated" by use of dictionaries); *Commonwealth v. Hart*, 28 A.3d 898, 909 (Pa. 2011) (reviewing various dictionaries to determine the meaning of "lure").

The term "regularity" is defined, *inter alia*, as "something that happens in the usual way." *Regularity*, Cambridge Dictionary, https://dictionary.cambridge.org/us/dictionary/english/regularity#google_vignette. Further, "legality" is defined as an "attachment to or observance of law," or "the quality or state of being legal." *Legality*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/legality. Assuming that a property is sold at an upset tax sale for significantly less than the fair market value of the property, that fact alone does not mean that the *proceedings in respect to such sale* were not conducted in accordance with a tax bureau's usual procedure, or in observance with the law. Absent an identifiable defect in the proceedings *which leads to* an inadequate bid at an upset tax sale, the sale price of a property is determined by the amount the highest bidder is willing to pay for the property, an outcome not controlled by the Bureau. *See City of Phila. v. Hart*, 224 A.3d at 822 (it is presumed that the price received at a duly-advertised public sale is the highest and best obtainable).

Further, our courts have recognized that an allegedly inadequate sale price, in and of itself, does not constitute an irregularity or illegality in the proceedings that may be challenged under Section 5860.607. For example, in *Gaynor v. Delaware Cnty. Tax Claim Bureau*, 330 A.3d 546 (Pa. Cmwlth. 2025), a landowner appealed a trial court's refusal to set aside an upset tax sale on the basis that the property was sold for a grossly inadequate price. In affirming the trial court's order, the Commonwealth Court reasoned:

> Appellant did not allege any sale irregularities in her Petition, nor did she present any evidence thereof at the trial court hearing. Thus, assuming, *arguendo*, that the Property was sold for a grossly inadequate price, *because there is no evidence to even suggest that there were irregularities in the tax sale that contributed to the grossly inadequate sales price*, the trial court properly denied the Petition.

*Id.* at 549 (emphasis added).

Similarly, in *Lapp v. Chester County*, 445 A.2d 1356 (Pa. Cmwlth. 1982), landowners appealed a trial court order denying their petition to set aside an upset tax sale on the grounds that they did not each receive notice by mail; that the posting of notice to a glass door with tape did not conform to the posting requirements set forth in the RETSL; and that the sale price, although in excess of the upset price, was grossly inadequate. The Commonwealth Court affirmed the trial court's order, and, in doing so, first determined that the appellants failed to establish irregularities in the notice and posting of the sale. The court then addressed the appellants' claim that the sale should have been set aside on the ground that the sale price of the property was grossly inadequate, and, relying on this Court's decision in *Swift*, held that, because the sale was conducted in accordance with the mandatory provisions of the RETSL, the trial court properly upheld the sale. *Id.* at 1358.

Finally, in *Povlow v. Brown*, 315 A.2d 375 (Pa. Cmwlth. 1974), the Commonwealth Court reversed a trial court order which set aside a tax sale based solely on the inadequacy of price. In doing so, the court stated:

> [t]he court below "cancelled" the deed to [the buyer] solely on the ground of the inadequacy of price. This was a compassionate act, pleasant to perform. It was not, however, within the court's power. The dominant purposes of the Real Estate Tax Sale Law were to provide speedier and more efficient procedures for enforcing tax liens and to improve the quality of titles obtained at a tax sale. The assumption by the court of the power to set aside a sale such as this made *after full compliance with the ample notice requirements of the statutes* and after confirmation absolute by the court would wholly defeat these purposes . . . .

*Id.* at 377-78 (emphasis added, footnotes omitted).

The above cases illustrate that there is a distinction between a claim of irregularity or illegality in the proceedings, and a claim that the sale price of a property sold at an

upset tax sale was inadequate. The cases further demonstrate that a claim of an inadequate sale price is not cognizable unless a landowner *first demonstrates* that there was an irregularity or illegality in the proceeding leading up to the sale.

Moreover, the language of Subsection 5860.607(g) of the RETSL, which addresses challenges to upset tax sales after they are confirmed, further supports this conclusion. As noted above, Subsection 5860.607(g) provides:

> (g) If no objections or exceptions are filed or if objections or exceptions are finally overruled and the sale confirmed absolutely, the validity of the tax, its return for nonpayment, the entry of the claim, or the making of such claim absolute and the proceedings of the bureau with respect to such sale, shall not thereafter be inquired into judicially in equity or by civil proceedings by the person in whose name such property was sold, by a grantee or assignee, by any lien creditor or by any other person, except with respect to the giving of notice under the act, to the time of holding the sale, or to the time of petitioning the court for an order of sale. There shall be no period of redemption after such sale and the sale shall be deemed to pass a good and valid title to the purchaser, free from any liens or encumbrances whatsoever, except such liens as are hereafter specifically saved, and in all respects as valid and effective as if acquired by a sheriff's deed.

72 P.S. § 5860.607(g).

Thus, upon confirmation of an upset tax sale, an owner may raise a challenge *only* to "the giving of notice under the act, to the time of holding the sale, or to the time of petitioning the court for an order of sale." *Id.* By its plain language, Subsection 5860.607(g) does not permit a challenge to an allegedly inadequate sale price. For the above reasons, we hold that Appellant's claim of an inadequate sale price does not

constitute an irregularity or illegality in the proceedings under Subsection 5860.607(d), and may not be challenged under Section 5860.607.[12]

Given the language of the RETSL, we likewise reject Appellant's argument that, even absent any irregularities in the upset tax sale, the trial court should have set aside the sale of the Property based on principles of equity. In support of his claim, Appellant cites this Court's decision in *Capozzi*, *supra*, wherein we held that gross inadequacy of sale price in relation to the value of stock was a sufficient basis for setting aside a sheriff's

---

[12] In his concurring and dissenting opinion, Justice Dougherty disagrees with our holding that an allegedly inadequate sale price does not constitute an irregularity under Section 5860.607(d). In support of his position, Justice Dougherty opines that the terms "regularity" and "legality" must mean different things in order to avoid the rule against surplusage. *See* Concurring and Dissenting Opinion (Dougherty, J.) at 4. Indeed, we do not dispute that "regularity" and "legality" have distinct definitions, a fact Justice Dougherty recognizes. *See id.* (observing that we define "regularity" as "something that happens in the usual way," and "legality" as "attachment to or observance of law" or "the quality or state of being legal."). However, Justice Dougherty then posits: "If the bureau sells the property for such an **irregularly low** price, why wouldn't that implicate the 'regularity' of the proceedings?" *Id.* at 6 (emphasis original and footnote omitted). Respectfully, Appellant asked, and we answered, a similar rhetorical question: "[w]hat could be more irregular than for a tax claim bureau to deprive an owner of his constitutional right to own and possess his property and receive for the deprivation of that right approximately 18 percent of the property's value?" Appellant's Brief at 25.

As explained above, our courts have recognized that an allegedly inadequate sale price, in and of itself, does not constitute an irregularity (or illegality) in the proceedings subject to challenge under Section 5860.607. *See Gaynor*; *Lapp*; *Povlow*. Moreover, even where we have affirmed the setting aside of *sheriffs'* sales − which, as we stress below, are not governed by the RETSL, *see infra* notes 14-15 and accompanying text − we observed that a *grossly* inadequate sale price is *distinct* from an irregularity in the sale itself. Examples of irregularities in the sale include situations where prospective bidders receive conflicting information regarding the conduct of the sale, which could *result* in an inadequacy of the bid amount; where bidders receive conflicting information as to whether the sale property will be encumbered by debt after the sale; and where the record reveals a misunderstanding by mortgagees prior to the sale regarding whether certain encumbrances would be discharged by the sale. *See infra* note 15 (discussing *Delaware Cnty. Nat. Bank.*; *Warren Pearl Works*). Notably, Justice Dougherty does not address these decisions. Instead, he merely notes his agreement with the concurring opinion of Justice Eagen and the dissenting opinion of Justice Pomeroy in *Swift*, and opines that the RETSL does not preclude equitable relief. Borrowing language from the Commonwealth Court's decision in *Povlow*, while Justice Dougherty's desired approach is "compassionate," 315 A.2d at 377, this Court cannot disregard the RETSL.

sale. Appellant further notes that the courts of this Commonwealth "have all recognized in the context of sheriffs' sales that the question of 'adequacy of price' is properly before the court subject to the articulation of an equitable remedy." Appellant's Brief at 30.

As noted above, Subsection 5860.607(d) limits challenges to issues involving the regularity or legality of the proceedings. Further, Section 5860.607(g) provides that, after confirmation of an upset tax sale, an owner may raise a challenge "judicially in equity or by civil proceedings" *only* to the giving of notice, to the time of holding the sale, or to the time of petitioning the court for an order of sale. 72 P.S. § 5860.607(g). In this manner, the RETSL expressly limits the specific claims a landowner may raise, including in equity, and an alleged inadequacy of sale price is not one of the permissible claims. We reiterate that, when parties' rights are "regulated and fixed by a comprehensive scheme of legislation, the maxim 'equity follows the law' is entitled to the greatest deference." *Swift*, 321 A.2d 898. Accordingly, we hold that Appellant cannot raise an equitable challenge to the sale price of the Property under the RETSL.[13] *See, e.g.*, *Povlow*, 315 A.2d at 377 (trial court's act of setting aside a sale based solely on an inadequate sale price, while "compassionate," was not within its power).

Finally, to the extent Appellant analogizes upset tax sales under the RETSL to sheriffs' sales, for which courts have allowed equitable challenges based on an alleged gross inadequacy in sale price, *see* Appellant's Brief at 31, we note that sheriffs' sales in

---

[13] Even assuming, *arguendo*, that the trial court was permitted to exercise its equitable powers to set aside the sale of the Property because the Bureau's action in allowing the Property to be sold for what Appellant believes was inadequate consideration was "arbitrary or capricious," Appellant's Brief at 32, we again observe that, aside from posing a rhetorical question, Appellant fails to identify *how* the Bureau's actions were arbitrary or capricious. Indeed, the evidence demonstrated that, for years, Appellant failed to timely pay his property taxes, and the Bureau took numerous steps, including steps beyond those required by the RETSL, to afford Appellant opportunities to set up a payment plan and avoid an upset tax sale. We find no basis to conclude that the Bureau acted arbitrarily or capriciously.

this Commonwealth are governed by our Rules of Civil Procedure,[14] whereas the requirements for upset tax sales, as set forth in the RETSL, are statutory, and were crafted by the legislature. As the RETSL comprises the entire statutory scheme regarding upset tax sales, we are bound by its provisions.[15] *See, e.g.*, *Lapp*, 445 A.2d at 1358 (in affirming the trial court's refusal to set aside an upset tax sale based on inadequate sale price, the court discounted Appellant's reliance on a sheriff's sale case).

In conclusion, upset tax sales are governed exclusively by the RETSL. Absent an irregularity or illegality in the sale proceedings that is tied to the allegedly inadequate sale price of a property, the RETSL does not permit a landowner to seek equitable relief based on the sale price, regardless of the ratio of the sale price to a property's fair market value. Accordingly, we hold that the trial court did not err when it denied Appellant's petition to set aside the upset tax sale of the Property, and we affirm the Commonwealth Court's order affirming the decision of the trial court.

---

[14] *See* Pa.R.C.P. 3129.1-3129.3.

[15] As the statutory language is plain, we need not speculate as to the legislature's rationale for structuring the RETSL as it did. We note, however, that sheriffs' sales typically involve private parties, and, thus, the concern regarding the "importance of the tax collection process to the perpetuation and continuing vitality of government" is absent. *See Lohr*, 238 A.3d at 1210. Regardless, we observe that, even in cases where this Court has affirmed a trial court's order setting aside a sheriff's sale of property, our decisions were not based *solely* on an alleged inadequacy of sale price. For example, in *Delaware Cnty. Nat. Bank v. Miller*, 154 A. 19 (Pa. 1931), we affirmed a trial court order setting aside a sheriff's sale because the prospective bidders received conflicting information regarding whether the property would be encumbered by debt after the sale, and "the confusion in the minds of prospective bidders, because of the conflicting notices, probably resulted in the gross inadequacy of the amount bid." *Id.* at 21. Similarly, in *Warren Pearl Works v. Rappaport*, 154 A. 587 (Pa. 1931), we affirmed a trial court order setting aside a sheriff's sale on the basis that, aside from what appeared to be a grossly inadequate sale price, the record revealed a misunderstanding by mortgagees, prior to the sheriff's sale, as to whether certain encumbrances would be discharged by the sale. *Accord Allegheny Cnty. v. Golf Resort*, 974 A.2d 1247, 1248 (Pa. Cmwlth. 2009) (remanding for entry of an order setting aside a sheriff's sale because "the evidence reflects irregularities in the sheriff's sale as well as a grossly inadequate sale price").

Order affirmed.

Justices Donohue, Wecht, Brobson, and McCaffery join the opinion.

Justice Dougherty files a concurring and dissenting opinion.

Justice Mundy did not participate in the decision of this matter.